## BUDD *v.* UNITED CARRIAGE CO.

[S. C. 35 Pac. Rep. 660.]

1. CARRIERS — RUNAWAY HORSES — PRESUMPTION OF NEGLIGENCE.— In an action for injuries to a passenger against a carrier operating coaches, evidence that the horses ran and kicked, and that the driver lost all control over them, raises a presumption that defendant, in disregard of its duty, provided wild and unsafe horses and a careless and incompetent driver.

2. CARRIERS — CONTRIBUTORY NEGLIGENCE OF PASSENGER.— Where a passenger in a carriage is placed in imminent peril by the running away of the horses, and the driver calls on her to jump out, the question whether she is guilty of contributory negligence in so doing is for the jury.

3. IDEM.— A carrier cannot escape liability for an injury caused by driving a team over an unsafe road by showing that the injured passenger directed him to drive over such road.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action brought to recover damages for injuries alleged to have been sustained by the plaintiff through the negligence of the defendant. The complaint, after alleging that the defendant was a common carrier, and its undertaking to carry the plaintiff around and through the city, avers, in substance, that the defendant, in disregard of its duty, sent a team for this purpose which was fractious and unsafe,—that it was not properly and safely hitched to the carriage with safe gearing and appliances,—and that the driver which the defendant furnished to drive such team was negligent and incompetent. It also alleges, "that, while the plaintiff was being conveyed as aforesaid, said team, by reason of being wild, fractious, and unsafe, and being carelessly hitched to said carriage with unsafe gearing and appliances, and being driven by said careless and incompetent driver, became unmanageable and ran away, and said driver was wholly unable to control the team, and that plaintiff, being in imminent danger of life and limb, and believing herself so to be, at the request of said driver, in order to escape greater injury, attempted to get out of said carriage, and was thereby forcibly thrown to the ground, breaking and dislocating the bones of her forearm near the wrist, and otherwise greatly bruising and injuring her." The answer admits that the relation of passenger and carrier existed between the plaintiff and defendant, but denies the alleged negligence and sets up contributory negligence as a defense. The evidence shows that the plaintiff informed the defendant, through the telephone, that she had a sick or invalid daughter whom she desired to take for a drive about the city, and requested the defendant to send to her residence for this purpose an easy carriage, with a safe and gentle team,

and a careful and competent driver. In response to this telephonic order, the defendant sent a team hitched to a close carriage or coupé, with a driver, to her residence, and plaintiff and her sick daughter entered the carriage, and the driver, as directed by the plaintiff, proceeded to convey them with said team and carriage from place to place upon several business and social errands about the city. The plaintiff, noticing that the horses, when at a halt, were nervous and fidgety, asked the driver whether they were gentle and safe, and he answered that "the horses were all right." The evidence shows that she was induced to make this inquiry by solicitude for her sick daughter, whom she did not wish to be subjected to the excitement and fright likely to result if the horses proved intractable or unruly. When through with her errands, the plaintiff instructed the driver to convey them to the City Park, where, after driving around its driveways for some time, she told him to leave the park by way of Park Avenue, so as to pass a certain new residence located thereon which she desired to see. This avenue was graded out to the City Park line, but there was a declivity of one or two feet which the carriage had to descend in turning from the park driveway into it. In making this turn, when the wheels descended the pitch or declivity, the tongue flew up between the heads of the horses, the carriage ran forward, whereupon one of them got his leg over the trace and commenced kicking, and then both ran away kicking. As the horses were thus running and kicking the driver hallooed to the ladies, "For God's sake, jump out!" which they promptly did, the plaintiff's daughter jumping out on one side, and she on the other, causing the injury complained of.

As tending to show the conduct of the driver, and the behavior of the horses under the circumstances, one witness testified: "It seemed as though, just as the team

started down the hill, one of the horses became frightened and commenced to kick;  *  *  *  as soon as the horses began to kick, the man got scared,— his actions indicated that from his performance.  The driver immediately raised to his feet, and commenced to halloo.  I could not understand what he said, but the horses were going down the hill at a rapid rate and kicking, and the driver did not seem to have any control over them at all.  When the team got opposite of us, the carriage door opened and a woman fell out from the other side from where we were, and after going several feet another woman fell out on the other side," etc.  Another witness testified that "the pitch was about a foot, and that when they came around, and made the turn to come into the road, the front wheels pitched down, and upon that the tongue flew up between the horses' heads, and one horse got his foot over the trace.  Then they started forward again, and the trace straightened out under his hind leg, when the horse commenced kicking, and the man kept hallooing, and they kept coming over the hill in that shape."  There was some further evidence tending to show that the team was not hitched to the carriage with proper gear, to enable the horses to hold the carriage back when going down a pitch or declivity.

Upon the part of the defendant the evidence tended to prove that the man in charge of the team at the time of the accident was a skillful, careful, and competent driver; that the team was safe and gentle, and was hitched to the carriage in a safe and proper manner, with safe harness and gearing; that the plaintiff had directed the driver where to go, and which way to drive, and that just before the accident she directed him to leave the park by Park Avenue, where there was a sharp declivity of one or two feet; that in driving down this declivity, in some unknown manner, one of the horses got his leg over a trace,

which frightened him and caused him to kick, and, the carriage pushing forward on the horses, they commenced running down the street; that the driver checked the team to about a standstill, and requested the plaintiff and her daughter to alight from the carriage; that plaintiff's daughter stepped out without injury, but the plaintiff being greatly excited, jumped out hastily, and sustained the injury complained of. The trial resulted in a verdict for the plaintiff, and from the judgment which followed, this appeal is taken.        AFFIRMED.

*Mr. John W. Paddock ( Mr. Ossian Franklin Paxton* on the brief), for Appellant.

*Mr. Thomas O'Day*, for Respondent.

Opinion by MR. CHIEF JUSTICE LORD.

1. The record discloses that when the plaintiff rested the defendant moved for a nonsuit on the ground that the testimony was insufficient to sustain the allegations of the complaint, which motion the court overruled, and the defendant excepted. The contention for the defendant is, conceding that the driver was careless on the occasion of the accident, it shows but a single act of negligence, which is not of itself sufficient to establish his general incompetency; and, for a like reason, conceding that the team became unmanageble, and began to kick and run, under the circumstances indicated, it only shows that the team was intractable or unsafe on this particular occasion, which is not sufficient to establish the character of the team as fractious and unsafe. This contention is based on the hypothesis that the negligence alleged as the cause of the injury imposed upon the plaintiff the burden of proving that the team furnished by the defendant was habitually fractious and unsafe, and that the person

provided by the defendant to drive such team was incompetent, or not possessed of the requisite skill and qualifications for that business.    As a consequence, the defendant claims that the testimony for the plaintiff showing that she sustained an injury by jumping from the carriage by direction of the driver, while the horses were running and kicking, under the circumstances disclosed, although the relation of passenger and carrier existed between the plaintiff and defendant, is incompetent and insufficient to show that such injury resulted from the negligence alleged, and therefore the court erred in overruling the motion for nonsuit and submitting such evidence to the jury.    From these considerations it will be observed that in the view taken by counsel he has wholly ignored the evidence in support of the allegation that the team was not properly hitched to the carriage with safe gearing and appliances, and confined his objections to the evidence in support of the allegations that the horses were unfit or unsuitable for the services required, and the driver incompetent and careless in the performance of his duty. He overlooks the fact that the complaint embraces nearly the whole field of the carrier's duty and obligations, and that evidence tending to prove negligence or failure to perform its duty in any essential particular alleged, adequate to have caused the injury, would be sufficient to sustain the verdict.    But as the objection raised involves the same principle as an objection to an instruction given by the court to which an exception is reserved, its consideration becomes important and imperative.    The real point of the objection is that the alleged negligence to which it refers, considered in connection with the evidence in support of it, does not make a case which comes within the principle, as sometimes briefly stated, that the happening of an injurious accident raises a presumption of negligence, and throws upon the defendant the onus of

showing that it does not exist. The gravamen of the complaint is that, while the relation of passenger and carrier existed between the plaintiff and defendant, the former was injured by reason of the defendant's negligence in furnishing a fractious and unsafe team, which, not being properly hitched with safe gearing to the carriage, nor provided with a careful and competent driver, became unmanageable, and began to kick and run away, when the plaintiff, at the urgent request of the driver, attempted to get out of the carriage, and was forcibly thrown to the ground and injured. As the relation of carrier and passenger is admitted, does the fact that the plaintiff sustained an injury under the circumstances indicated make a *prima facie* case of negligence against the defendant?

The general rule undoubtedly is that in actions for personal injuries caused by the alleged negligence of the defendant, the plaintiff is required to produce some evidence of negligence to warrant the judge in submitting the case to the jury. "But when the cause of the accident is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence for the jury in the absence of explanation by the defendant, that the accident arose from want of proper care": *Scott* v. *London Docks Co.* 3 Hurl. & C. 596. The law imposes the duty upon the proprietor of a stage coach or other public vehicle to provide a reasonably safe conveyance, drawn by steady horses, with secure harness, and a skillful and competent driver. In the discharge of this duty, the carrier is bound to use the utmost care and diligence of cautious persons to prevent injury to passengers. In *Crofts* v. *Waterhouse*, 3 Bing. 321, Bost, C. J., said: "The coachman must have competent skill,

and use that skill with diligence; he must be well ac quainted with the road he undertakes to drive; he must be provided with steady horses; a coach and harness of sufficient strength, and properly made; and also with lights by night. If there be the least failure in any one of these things, the duty of the coach proprietors is not fulfiled, and they are answerable for any injury or damage that happens." But it is not meant by this language that a stage proprietor is a warrantor of the safety of his coach, its equipments, the competency of his driver, or other appliances used, but that he is bound to use the utmost diligence and care in making suitable provisions for those whom he carries. So in *McKinney* v. *Neil,* 1 McLean, 540, it is held to be the duty of a stage proprietor " to furnish good coaches, gentle and well broke horses, good harness, and a prudent and skillful driver," and that he is liable to any passenger who may receive an injury for any defect in these particulars. And GREENE, J., said: "With horses gentle and well broke, with coaches and harness good and strong, with drivers sober, prudent, and skillful, a stage coach line might be regarded as managed with human care and foresight": *Frink* v. *Coe,* 4 G. Greene, 558, 61 Am. Dec. 41.

The liabilities of the carrier arise from the duties which the law imposes, and, while he is not an insurer against all defects, his liability extends to such as might be guarded against by care and skill. So that, although the duty is not imposed upon him of conveying his passengers with absolute safety, yet his liability goes to the extent of requiring that he shall use all care and diligence in providing a suitable vehicle, safe horses and harness, and a qualified driver. This is based on the principle that, the means of transportation being under the management of the carrier, and their fitness for such service peculiarly within his knowledge, he is bound to

be supplied with every reasonable requisite to insure the safety of his passengers. This being so, when the duty is performed in the ordinary course of things an accident would not be likely to happen, but when one occurs from some apparent defect in the means, appliances, men or apparatus employed by such carrier in the transporation, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of proper care. Hence, the rule is well settled that in an action by a passenger for personal injuries, when it is made to appear that the accident resulted from defects in the carriage or in the appliances, or in the want of skill of the driver, or in the unfitness of the team, the presumption of negligence arises, and the onus is cast upon the defendant to relieve himself of responsibility by showing that the injury was the result of an accident which the utmost care and foresight could not have prevented. When, therefore, a plaintiff establishes the relation of carrier and passenger, the fact that he received an injury from any defect in the instrumentalities which it was the duty of the carrier to furnish as a means of his transportation, makes a *prima facie* case of negligence against the carrier. The onus is then cast upon the carrier to show that he used reasonable care and diligence in providing a suitable conveyance, steady, and well trained horses, good harness and proper appliances for the journey, and a competent driver, who acted with reasonable caution and skill. In a word, if a carrier would relieve himself from liability he must rebut the presumption of negligence which arises from the happening of the accident by showing that the injury was not occasioned by any defect in the hack, or want of care or skill in the driver, or any neglect or want of diligence, or foresight on his part: *Christie* v. *Griggs*, 2 Campb. 80; *Jackson* v. *Tollett*, 2 Stark. 34; *Sales* v. *Western Stage Co.* 4

Iowa, 547; *Farish* v. *Reigle*, 11 Grat. 711, 62 Am. Dec. 666; *Maury* v. *Talmadge*, 2 McLean, 157; *Stokes* v. *Saltonstall*, 13 Pot. 181; *Boyce* v. *California Stage Co.* 25 Cal. 468; *Treadwell* v. *Whittier*, 80 Cal. 589, 13 Am. St. Rep. 175, 5. L. R. A. 498, 22 Pac. 266; Story on Bailment, §§ 592–601.

In the case at bar the record discloses the circumstances under which the horses began to run and kick, the conduct of the driver on the occasion, and how the injury occurred to the plaintiff. The defendant claims that these circumstances afford no inference that it failed in its duty to provide a safe and steady team or a careful and competent driver. Counsel argues that the fact that the team ran and kicked, or that the driver was careless on this occasion, does not show that the team were addicted to this habit or vice, or that the driver was generally incompetent, and hence was not evidence that the plaintiff's injury was caused by reason of the defendant's negligence in providing an unsafe or unreliable team, or a careless or incompetent driver. This is putting the onus on the person who has no means of knowing the temper or character of the team, or the particular skill or qualifications of the driver, to show that the team is habitually vicious or unsafe, or that the driver is without the requisite qualifications for his position. In *Simpson* v. *Omnibus Co.* 8 L. R. (C. P.), 391, a passenger in an omnibus was injured by a blow from the hoof of one of the horses which had kicked through the front panel of the vehicle, but there was no evidence to show that this particular horse was vicious or a kicker. It was contended that a casual kick by one of the numerous horses employed by the company was no evidence of a want of due and reasonable care on its part. It was argued, as here, that a horse which has never kicked before may do so once without acquiring the character of being vicious, and hence that the burden of proving the horse unsafe

rested on the plaintiff. But in that case, BOVILL, C. J., said: "In the present case a horse drawing an omnibus belonging to the defendants, without any assignable cause, kicks out, and strikes and injures the female plaintiff, who was riding in the vehicle. It seems to me that that alone presents a case which calls for some explanation on the part of the proprietors. It is said that it is the nature of horses to kick. But I think it ought not to be the nature of a horse employed to draw a public vehicle to kick. Proof having been given that the horse in question had misconducted itself in the way charged, the burden of showing that he was not habitually a kicker, or something to account for his having kicked on this particular occasion, lay on the defendants. The mere fact of his having kicked out was, I should say, *prima facie* evidence for the jury." In the present case, the fact that the horses ran and kicked, and the driver was unable to control them under, the circumstances disclosed, tended to show that the defendant, in disregard of its duty, had provided wild and unsafe horses and a careless and incompetent driver as charged, and cast the onus upon the defendant of showing that such horses were not habitually unsafe or unmanageable, or the driver negligent or incompetent, or something to account for the running and kicking of the horses, or the inability of the driver to control them on this particular occasion.

In *Roberts* v. *Johnson*, 58 N. Y. 616, the evidence tended to show that while the plaintiff was getting out of the omnibus, the horses started, whereby plaintiff was violently thrown upon the ground and injured. GROVER, J., said: "This showed, *prima facie*, either that the horses were unsuitable for such service, or the driver incompetent or negligent in the performance of his duty. If the starting of the horses was attributable to some other cause, for which the defendants were not responsi-

ble, it was for them to show it.    This results from the
fact that where proper horses and suitable drivers, who
attend to their business, are employed, the horses will
not start while passengers are getting into and out of
the stage.    If anything occurs causing such start, which
is beyond the control of the driver or proprietor, they
can readily show it.    Such fact is peculiarly within their
knowledge, while, in most cases, the persons injured
would be entirely ignorant of it."    So here, with equal
reason, the fact that the horses misconducted themselves
showed, *prima facie,* either that the horses were wild and
unsafe for such service, or that the driver was negligent
and incompetent in the performance of his duty.    For,
if the running and kicking of the team was attributable
to some other cause for which the defendant was not
responsible, it was for the defendant to show it, as such
matter was peculiarly within its knowledge, and, gener-
ally, without the knowledge of the person injured.    But
there was other evidence.    It was proved that the horses
were without breeching, and that the pole was not firmly
fastened down by some appliance, so that the horses
could hold the carriage back and prevent it from run-
ning upon them, as happened when the team turned
from the park into the avenue, in passing down a de-
clivity of a foot or so, when one horse got his hind leg
over the trace, and both horses commenced to run and
kick.    The evidence for the defendant fails to account
for the horse getting his leg over the trace, but says that
"in driving over this declivity in some unknown man-
ner one horse got his leg over the trace."

The cases cited by counsel to the effect that the fact
that a horse becomes unmanageable on one occasion does
not show him to be vicious in disposition are in actions
where no contractual relations existed between the par-
ties, and those to the effect that a single act of negligence

by a servant does not establish general incompetency are in actions where the relation of master and servant existed. As GORDON, J., said: "An employé, by his contract, is presumed to run the ordinary risks of the machinery and appliances he is engaged to supervise or use; he is also held to a knowledge of the character and obvious defects of such machinery and appliances, as well as the skill and habits of his co-servants. A passenger, on the other hand, neither can know, nor is presumed to know, anything about these things. He has paid his passage, and he is wholly passive in the hands and at the mercy of the transportation company and its agents. The doctrine advocated by the defendant's counsel by which the passenger would be put on a par with an employé will not do; it accords neither with reason nor precedent": *Phila. R. R. Co.* v. *Anderson*, 94 Pa. St. 359, 39 Am. Rep. 787.

2. Whether the plaintiff was contributorily negligent in jumping from the carriage, under the circumstances, depends upon whether her act was precipitate or rash, or such as a person of ordinary prudence might do. The evidence shows that the plaintiff was in a close coupé, that the horses were running and kicking, and that the driver, who appeared to be frightened and unable to control them, was calling excitedly to the plaintiff and her daughter, "For God's sake, jump out." These circumstances showed presumptively that the negligence of the defendant had placed the plaintiff in a situation of imminent peril. In such case the law does not require of the passenger the exercise of all the presence of mind and care of a prudent man; and if the plaintiff, in endeavoring to escape from such danger, either by following the directions of the driver, or the dictates of her own judgment, acted as a person of ordinary prudence would have done under similar circumstance, she was not negligent: 2 Am. &

Eng. Enc. 766.   Hence, whether she acted negligently or not, was a question of fact to be submitted to the jury. So also, in determining whether the plaintiff was negligent, the jury were not only to consider the presumption arising from the happening of the accident and injury, but all the facts and circumstances in evidence.

3.   But, it is claimed, that, as the plaintiff directed the driver to go down the avenue so as to afford her an opportunity to view a certain house which was being erected, she assumed the entire control of the driving and therefore was responsible for the accident which occurred in traveling down such street.   This contention relates to that portion of the charge in which the court said that "the plaintiff did not take the responsibility of the road being safe but left that to the driver's judgment." It is usual for persons who hire a carriage and driver to give general directions as to places where they desired to be conveyed, and the driver is expected to know whether the roads over which he must pass to reach the places to which he is directed to go are suitable and reasonably safe for passage.   The carrier cannot escape liability for an injury caused by driving a team over an unsafe road by showing that the injured passenger directed or expressed a wish to travel over such road.   As the court said in *Anderson* v. *Scholey*, 114 Ind. 553:   "It is true the driver testified that he was in the road pursuing the right track, and that he pulled to the left, thereby upsetting the conveyance over the bank, because the plaintiff told him repeatedly he was too far to the right.   The plaintiff denies this.   However the fact may be, it was the duty of the defendants to supply the coach with a driver who knew the way for himself, and who would not be controlled by the suggestion of a passenger on the inside, while he occupied the seat charged with the duties and responsibility of driver."   The fact is, there is no

evidence that the road was unsafe. We do not think, therefore, that the evidence was incompetent, or that the court erred in refusing the nonsuit, or that there was error in the instructions. It follows that the judgment must be affirmed.    AFFIRMED.

[ Argued January 18; decided February 14, 1894; rehearing denied.]