Decided 8 February, 1904.

**RADLEY *v.* COLUMBIA RAILWAY CO.**

[75 Pac. 212.]

CARRIERS—BECOMING A PASSENGER—RIDING ON ENGINE.

1. The mere silent acquiescence of a railroad conductor in not objecting when he finds a person riding on a part of the train not designed for passengers does not make such person a passenger.

BECOMING PASSENGER BY GOING TO STATION.

2. The relation of passenger and carrier is one of contract, and begins only when the passenger passes under the care of the carrier to be transported in the place provided for that purpose. While it sometimes happens that a person is considered a passenger before actually boarding the conveyance, he is not so considered after boarding it in a part not intended for passenger accommodation. Thus, a person who goes to a railroad station intending to board a train, but who rides on the engine, is not a passenger with reference to either the station or the train.

RIDING ON ENGINE AS CONTRIBUTORY NEGLIGENCE.

3. A person, who at the direction of the engineer, and without the knowledge of the conductor, rides on the engine of a train which carries passengers, and is injured by an occurrence that would not have affected him had he been in the place provided for passengers, is guilty of contributory negligence.

From Sherman: W. L. BRADSHAW, Judge.

This is an action by R. M. Radley against the Columbia Southern Railway Company to recover damages for an injury the plaintiff received in jumping from one of the defendant's locomotives upon which he was riding. The defendant owns and operates a railroad from Biggs Station, on the line of the Oregon Railroad & Navigation Company, south to Shaniko. For some distance out of Biggs there is an up grade on defendant's road, at the foot of which, in pursuance of the demand of the Oregon Railroad & Navigation Company, it had put in a derailer for the purpose of derailing a runaway car or train, and preventing a collision with either Oregon Railroad & Navigation or its own trains on the line or in the yard. The plaintiff resides at Biggs. On the day before the accident he went on some business to Wasco, the first station on defendant's road. When ready to return home in the evening, he went to the station to learn whether a delayed freight train, which carried passengers, was going on through, and there

met the conductor of the train, who told him that it would not go until morning, and that he might go down on it then, provided he was at the station in time. The next morning the plaintiff purchased some provisions, and had them delivered at the station. He soon after went down himself, and met the station agent, who told him that his things had been put aboard the train, and that, if he desired to ride thereon, he would have to go to where it was standing, some three or four hundred feet south of the depot, as it would not or could not stop after it had started. The train consisted of an engine and tender, fifteen loaded cars, and the caboose. The plaintiff, without purchasing a ticket or paying his fare, started up the track to get on the caboose, but before he reached it the signal to start had been given, and after he had gone two or three car lengths past the engine, the engineer called out to him, saying: "Come, get on here. I haven't time to wait. We want to start right out"—when the plaintiff got aboard the engine. At that time the conductor was on the top of the train, about two-thirds of the way back to the rear, but he did not say anything, and there is no direct evidence that he saw the plaintiff, or knew that he got aboard the engine. The plaintiff rode on the engine to Biggs, but when the train reached the derailing switch it was not stopped, as was the custom, so that some one could go forward and close the switch, but, as we must assume from the verdict of the jury, through the negligence and carelessness of the defendant and its servants, the engine and the first three cars ran off the track and onto the ties, the caboose and the other cars remaining on the track. When it was apparent that the engine was going into the open switch, the plaintiff, in response to a suggestion from the fireman, leaped to the ground, breaking his leg, for which injury he seeks to recover in this case. His action is based upon allegations that he was a passenger, and that the

accident occurred on account of the carelessness of the defendant. The defense is that he was not a passenger, but a trespasser, and that the accident was due to his contributory negligence in riding at an exposed and unusual place on the train. He had a verdict and judgment in the court below, and the defendant appeals.     REVERSED.

For appellant there was a brief over the name of *Snow & McCamant,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief and an oral argument by *Mr. William H. Wilson.*

MR. JUSTICE BEAN, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. There were many points discussed by counsel at the argument and in the briefs, but the controversy centers around the question as to whether the plaintiff was a passenger at the time of the accident, and entitled to the rights and protection of such, and, if so, whether he is guilty of such contributory negligence in riding on the engine as will bar a recovery. There is no contention that he was a passenger because of anything said or done by the engineer. It is admitted by the plaintiff that the engineer had no authority to bind the defendant by inviting plaintiff to ride on his engine, or to create the relation of passenger and carrier between him and defendant. It is argued, however, that plaintiff was a passenger, because (1) he was riding on the engine with the knowledge of, and without objection from, the conductor; and (2) he went to the station on the morning of the accident, intending to take passage on the train, and was directed by the station agent of the defendant where to go to board the train. There is no pretense that the plaintiff was on the engine by the express invitation, direction, or permission of the conductor. It is only sought to infer from the testimony and

surrounding circumstances that the conductor probably
knew that he was aboard the engine, although such an in-
ference is hardly warranted by the testimony.  But even
if the conductor had knowledge of the fact, it was not
sufficient to make him a passenger.  The train was about
to start at the time the plaintiff boarded the engine; the
signal had already been given; and it was not the duty of
the conductor to delay the departure of the train, or to stop
it after it had started, before reaching the next station, to
put the plaintiff off, in order to prevent him from becom-
ing a passenger: *Downey* v. *Railway Co.* 28 W. Va. 732;
*Atchinson, T. & S. F. R. Co.* v. *Headland,* 18 Colo. 477 (33
Pac. 185, 20 L. R. A. 822).  Again, the company had pro-
vided a car attached to the train for the carriage of pas-
sengers, and the plaintiff had knowledge of that fact.  The
mere silent acquiescence of the conductor in his riding on
an engine would therefore not make him a passenger:
4 Elliott, Railroads, § 1580; *Virginia Mid. R. Co.* v. *Roach,*
83 Va. 375 (5 S. E. 175).

A conductor, of course, has charge of the train, and has
authority to assign passengers to cars and seats.  Ordi-
narily, if he directs a passenger to take a certain place on
the train, the passenger may obey him without losing his
status as a passenger, or being guilty of contributory neg-
ligence, as a matter of law, unless, perhaps, the place is so
obviously unsafe and dangerous that no reasonably pru-
dent person would consent to occupy it, even if directed
to do so.  But a conductor's mere knowledge that a person
is riding at an unsuitable or exposed place on the train, or
one he knows is not designed for carrying passengers, does
not make the person a passenger, or charge the carrier
with that high degree of care toward him which it owes
to one whom it has accepted and agreed to transport as a
passenger.  Where one has, by entering a car provided by
a railway company for that purpose, become in fact a pas-

senger, he perhaps does not lose such status by assuming a dangerous position on the train, assigned him by the direction or consent of the employés in charge thereof, although under such circumstances he may even be guilty in some instances of such contributory negligence as would preclude a recovery: 3 Thompson, Neg. § 2671; *Brown* v. *Scarboro*, 97 Ala. 316 (12 South. 289); *Willmot* v. *Corrigan Consol. St. Ry. Co.* 106 Mo. 535 (17 S. W: 490); *Lake Shore & M. S. Ry. Co.* v. *Brown*, 123 Ill. 162 (14 N. E. 197, 5 Am. St. Rep. 510); *Indianapolis & St. L. R. Co.* v. *Horst*, 93 U. S. 291. Before this principle can apply, however, he must first become a passenger, and he does not assume that relationship by voluntarily boarding an engine, which is obviously not designed for the carriage of passengers: *Mc-Gucken* v. *Western N. Y. & P. R. Co.* 77 Hun, 69 (28 N. Y. Supp. 298); *Virginia Mid. R. Co.* v. *Roach*, 83 Va. 375 (5 S. E. 175); *Robertson* v. *New York & Erie R. Co.* 22 Barb. 91. The plaintiff, therefore, did not become a passenger by riding on the engine with the silent acquiescence of, and without objection from, the conductor, even if the evidence is sufficient to sustain his position on this point.

2. Nor did he become a passenger on the train because he went to the station for that purpose. Where one goes to a railway station at a reasonable time before the departure of a train for the purpose of traveling thereon, he may be regarded as a passenger in so far as it may relate to an injury received through the negligence or carelessness of the company while in or about the station or attempting to board the train: *Allender* v. *Chicago, R. I. & Pac. R. Co.* 37 Iowa, 264; *Grimes* v. *Pennsylvania Co.* (C. C.) 36 Fed. 72; *Warren* v. *Fitchburg R. Co.* 8 Allen 227 (85 Am. Dec. 700); *Exton* v. *Central R. Co.* 62 N. J. Law, 7 (42 Atl. 486). The plaintiff, however, was not injured at the station, but while riding on the train eight or ten miles distant therefrom; and the duty of the company to him must be determined

by the relation he bore to it on the train, and not while he was at the station. One does not become a passenger on a railway train until he has come under the charge of the carrier by boarding, or attempting to board, at its invitation, a car thereof used or held out by it for the transportation of passengers. The relation of passenger and carrier is one of contract, and requires the assent of both parties. To become a passenger, one must put himself in charge of the carrier, with the *bona fide* intention of being carried, and the carrier must receive and accept him as such : 4 Elliott, Railroads, § 1579; 5 Am. & Eng. Enc. Law, (2 ed.) 488; *Webster* v. *Fitchburg R. Co.* 161 Mass. 298 (37 N. E. 165, 24 L. R. A. 521); *Illinois Cent. R. Co.* v. *O'Keefe*, 168 Ill. 115 (48 N. E. 294, 39 L. R. A. 148, 61 Am. St. Rep. 68). Of course there is hardly ever any formal act by the passenger in putting himself in the care of the carrier, or by the carrier in accepting him as a passenger, but these relations are commonly implied from the circumstances. The railway company holds itself out as ready to receive as passengers all who are willing to be governed by its rules and regulations, and who present themselves at a proper place, at a proper time, and in a proper manner. By providing certain cars attached to a train for the carrying of passengers, the company impliedly invites all persons desiring to be transported to enter such cars, and one who accepts such invitation in good faith becomes a passenger without any further act on the part of the company. The providing of such cars, however, manifests an intention on the part of the company not to accept a person as a passenger who in boarding the train voluntarily enters one of its cars or vehicles which is obviously not intended for the carriage of passengers, even though he may have been at the station for the purpose of traveling on the train, and has a ticket entitling him to ride.

44 OR.—— 22

The relation of passenger and carrier can only begin when the passenger puts himself in charge of the carrier for the purpose of being transported on the train. It is not enough that he may have a ticket, or may have an immediate intention to become a passenger. He is not such, so far as the act of carriage is concerned, until he actually puts himself under the charge of the company by entering a car provided by it for the purpose. Thus, in *Illinois Cent. R. Co.* v. *O'Keefe*, 168 Ill. 115 (39 L. R. A. 148, 61 Am. St. Rep. 68, 48 N. E. 294), the deceased, who had transportation entitling him to ride on the train, got upon the front platform of the baggage car after the train had started from the station, and while riding there was killed by a collision with a freight train. The conductor and engineer saw him climb on the front platform, but did not see him afterward. The court held that he was not a passenger, because he was riding in a place not provided by the company for the carriage of passengers. In the course of the opinion it is said: "It was also necessary for the plaintiff to prove that the relation of passenger and carrier existed between the deceased and the defendant. This relation which was claimed to exist is a contract relation. A railroad company holds itself out as ready to receive and carry, and is bound to receive and carry, all passengers who offer themselves as such at the places provided for taking passage on its trains, and who take such passage in the cars provided for passengers. When one so presents himself, the contract relation under which he acquires the rights of a passenger may be either express, or may be implied from the circumstances. If a person goes upon cars provided by the railroad company for the transportation of passengers, with the purpose of carriage as a passenger, with the consent, express or implied, of the railroad company, he is presumptively a passenger. * * Both parties must enter into and be bound by the con-

tract. The passenger may do this by putting himself into the care of the railroad company to be transported, and the company does it by expressly or impliedly receiving him and accepting him as a passenger. The acceptance of the passenger need not be direct or express, but there must be something from which it may be fairly implied. One does not become a passenger until he has put himself in charge of the carrier, and has been expressly or impliedly received as such by the carrier."

Again, in *Missouri, K. & T. Ry. Co.* v. *Williams,* 91 Tex. 255 (42 S. W. 855), the plaintiff, desiring to return to his home, got on the front platform of a passenger train at one of the stations, because he did not have time to get on elsewhere. He had money with which to pay his fare, and intended to do so, but had no ticket. After the train started the fireman began throwing water on him from a hose, and continued doing so until he jumped off the train and was injured. It was held that he was not a passenger, and could not recover, because he did not take passage on that part of the train provided by the company for carrying passengers. The court, after discussing what constitutes a passenger, and saying that, in order to raise the implied contract, the party desiring to be carried by the railroad company must take passage on that part of the train provided by it for carrying passengers, say: " Notwithstanding the statute permits the payment of fares upon the train, we think it a reasonable regulation for the company to make that it should establish places at which to receive its passengers, and designate coaches for them to ride in. It is proper that the carrier should be notified of the presence of all persons claiming the protection of passengers; otherwise it would be unable to distinguish between such persons and those who might be trespassers, where they enter portions of the train not used for the carriage of passengers. By this rule the rights of a carrier and a

passenger would be alike guarded, while, on the other hand, if the person seeking passage on the train were permitted to board any part of the train, as expressed in the instruction, the carrier would be placed under the highest obligation to one with whom it did not know it sustained the relation of carrier to passenger." In *Chicago & Erie R. Co.* v. *Field,* 7 Ind. App. 172 (52 Am. St. Rep. 444, 34 N. E. 406), the plaintiff was at the station on defendant's road, and desired to go to another station. When the train stopped, he boarded the front platform of the express car. After the train started, a brakeman appeared, inquired where he was going, and demanded his fare, which was paid in full. He rode on the platform until a short distance from his destination, when he was discovered by the conductor and expelled from the train. In an action against the company for breach of contract, the court held that plaintiff was not a passenger, but a trespasser, and that the payment of fare to the brakeman created no contractual relation between plaintiff and defendant, because it was paid at a place and upon a vehicle not set apart for passengers. In *Merrill* v. *Eastern Railroad Co.* 139 Mass. 238 (1 N. E. 548, 52 Am. Rep. 705), the plaintiff's intestate had been traveling on an engine, but got off at one of the stations, and after the conductor had called "All aboard," and the train had started, got on the front platform of the first car, and when the train had gone a short distance he fell off and was killed. The court held that he did not become a passenger by riding on the engine, because it was a place which every one knows is not intended for passengers, but, assuming that his status on the engine did not give character to his subsequent relation to the company, and that he was in the same position at the time of the accident as if he had attempted to get on the train at the station for the first time, he was still not a passenger, because outside of any implied invi-

tation of the company, and was riding at an improper place on the train. Other cases might be referred to to the same effect, but these are sufficient for the purpose.

In each of them the injured party attempted to board the train at the station, and was therefore, perhaps, a passenger, in the sense that, if he had been injured at the station by the negligence of the defendant, he could have recovered; but his right to recover for any injury received while riding on the train was made to depend upon whether the company had accepted and agreed to carry him as a passenger thereon. There is no suggestion in any of the cases that his right to ride on the engine or other exposed place on the train was affected in any way by the fact that he went to the station intending to take passage on the train. Going to a railway station for such purpose only indicates a design to enter into the relation of passenger and carrier, but it does not create it so far as it may relate to the contract of carriage. All the authorities concur that, in order to entitle a person to the rights of a passenger, he must intend to ride in a proper place on the train. "Every person being carried upon a public conveyance usually employed in the carriage of passengers," says Mr. Hutchinson, "is presumed to be lawfully upon it as a passenger. But if a person, by his own solicitation or by his own consent, is carried upon a vehicle or conveyance which is not used for the purpose of passenger carriage, and this be known to him, there can be no such presumption, although the owner may be a common carrier of passengers by other and different means of conveyance": Hutchinson, Carriers, § 554. A railway company owes to its passengers the highest possible degree of skill in transporting them, and in the management and operation of the train, and is liable for slight negligence. Therefore, as said by the Supreme Court of Illinois in *Chicago & E. Ill. R. Co.* v. *Jennings*, 190 Ill. 478 (60 N. E. 818, 54

L. R. A. 827), " it seems plain that the circumstances must be such that the company will understand that such a person is a passenger in its care, and entitled to its protection. The company certainly has a right to know that the relation and duty exist, and the passenger must be at some place provided by the company for passengers, or some place occupied or used by them in waiting for or getting on or off trains. Whenever a person goes into such a place with the intention of taking passage, he may fairly expect that the company will understand that he is a passenger and protect him. If he could be a passenger before reaching such a place, there would be no limit or place where it could be said that he became a passenger." Or, as expressed by the Supreme Court of Virginia in *Jammison* v. *Chesapeake & Ohio Ry. Co.* 92 Va. 327 (23 S. E. 758, 53 Am. St. Rep. 813): "Railroad corporations owe a high degree of duty to their passengers. They must do all for their safety that human skill and foresight may suggest, and are responsible for any—even the slightest— neglect; but, that the passenger may hold the company to this high degree of responsibility, it is incumbent upon him to occupy the position upon the train assigned to passengers, and, if he voluntarily assumes a position of peril, and injury results from it, he cannot recover." The plaintiff, having voluntarily entered a car on the train of the defendant which was obviously not intended for the carriage of passengers, and which he must have known and did know was designed exclusively for the employés of the railway company, was not, in our opinion, a passenger, and is not entitled to recover for that reason.

3. But, if we are mistaken, and under any possible view he is to be regarded as a passenger at the time of the accident, he was guilty of such contributory negligence, as a matter of law, in riding in the engine, as would bar a recovery. A railway locomotive is not a place intended for

the carriage of passengers, and an adult person who is injured in consequence of riding thereon, even with the silent acquiescence of the conductor or the direction of the engineer, cannot recover, where he would not have been injured if he had been in his proper place on the train : 5 Am. & Eng. Enc. Law, (2 ed.) 674; 3 Thompson, Neg. 2943; Beach, Con. Neg. 154; 1 Fetter, Carriers, § 175. The engineer has no authority to bind the company by accepting him as a passenger on his engine, and the mere consent of a conductor will not justify a passenger in occupying a place of obvious danger, not designed or intended for the use of passengers. Thus, as said by Mr. Wood: "Where a person voluntarily and unnecessarily puts himself in a position of danger, he cannot excuse the act because he was permitted to do so by the company's agents, in direct violation of their rule ": Wood, Railway Law, p. 1109, § 304. Again, on page 1083, § 301, the same author says : "The presumption of law is that persons riding upon trains of a railroad carrier which are palpably not designed for the transportation of persons are not lawfully there, and, if they are permitted to be there by the consent of the carrier's employés, the presumption is against the authority of the employés to bind the carrier by such consent." In *Hickey* v. *Boston & L. R. Co.* 14 Allen 429, the court use the following language : "If sufficient and suitable provisions be made within the car for all passengers, the managers of the train are not under obligations to restrict them to their proper places, nor to prevent them from acts of imprudence. If they voluntarily take exposed positions, with no occasion therefor, nor inducement thereto, caused by the managers of the road, except a bare license by noninterference or express permission of the conductor, they take the special risks of that position upon themselves." In *St. Louis S. W. R. Co.* v. *Rice,* 9 Tex. Civ. App. 509 (29 S. W. 525), the plaintiff at the

time of the accident was riding on the top of the caboose with the assent of the conductor, because, as he contended, the car was so crowded that there was no room inside. The court held that there being no room inside the car would not justify the plaintiff in taking a position of obvious danger by riding at a place not designed by the company for the use of passengers, nor would the consent of the conductor relieve him from using that degree of care that a person of ordinary prudence would exercise.

In *Texas & Pac. Ry. Co.* v. *Boyd*, 6 Tex. Civ. App. 205 (24 S. W. 1086), a passenger who was riding on the engine was injured in a collision; and it was held, in effect, that by voluntarily taking a place upon the train more hazardous than that provided by the carrier for passengers, when such hazard was known, or might have been known by the use of ordinary care, he thereby assumed the risks of the increased danger, and could not recover for an injury received while so riding which would not have been received if he had been at a proper place on the train. In *Sanders* v. *Chicago, R. I. & P. R. Co.* 10 Okl. 325 (61 Pac. 1075), the plaintiff went to the railway station, and purchased from defendant's agent a ticket entitling him to ride on a train then standing at the station. Before he could get on the train, however, the vestibule door was closed and locked; and, as he was unable to get the door open, he concluded to ride on the step, which he did for a time, and then fell off and was injured. It was held that he was guilty of contributory negligence, and could not recover, although it would seem that he was compelled to ride on the step or wait for another train. In *Railroad Company* v. *Jones*, 95 U. S. 439, the plaintiff, an employé of the defendant, whom, with other employés, it was accustomed to carry to and from his work, was told by the person in charge of the train that they were about to start, and to "jump on anywhere," and climbed upon the pilot of the locomotive, and

rode there until he was injured. The court held that he was guilty of such negligence as would preclude a recovery, Mr. Justice SWAYNE saying: "There was room for him in the box car. He should have taken his place there. He could have gone into the box car in as little, if not less, time than it took to climb to the pilot. The knowledge, assent, or direction of the company's agents as to what he did is immaterial. If told to get on anywhere, that the train was late, and that he must hurry, this was no justification for taking such a risk. As well might he have obeyed a suggestion to ride on the cowcatcher, or put himself on the track before the advancing wheels of the locomotive. The company, though bound to a high degree of care, did not insure his safety. He was not an infant nor *non compos*. The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter, the former could not arise." These authorities all go to the effect that when a passenger assumes a place of obvious danger on a railway train, not intended by the carrier for passengers, he assumes the increased risk caused thereby.

But it is argued that this rule can only apply to persons who voluntarily ride at exposed and dangerous places, and that the plaintiff was not so riding on the engine, but was in some way compelled to do so, and therefore the doctrine has no application to him. There is, however, no evidence showing or tending to show that the plaintiff was compelled or required to ride on the engine by any one having authority to act for the defendant. He came to the station late, and was told by the engineer that the train was about to start, and to get on the engine. But the engineer could not thereby bind the defendant, or require the plaintiff to ride at any particular place. The conductor was in charge of the train, and there is no pretense that he ordered or directed the plaintiff to get on the

engine, or even that he knew, unless through the merest possible inference, that the plaintiff was riding there, until the accident occurred. If the plaintiff had got on the engine by the command or direction of the conductor, a different question would be presented. As it is, however, his act was purely voluntary; and therefore there is no ground, as we view the record, for the position that his riding there was compulsory. If he had been riding in the caboose at the time of the accident, he would have been a passenger, because in a place provided by the railway company for the carriage of passengers, and, if injured by the negligence of the defendant, would have had a cause of action against it. But, as he was voluntarily on the engine, and would not have been injured if he had been at a proper place on the train, the defendant is not liable. *Indianapolis* v. *Horst*, 93 U. S. 291, and *Lake Shore & M. S. Ry. Co.* v. *Brown*, 123 Ill. 162 (5 Am. St. Rep. 510, 14 N. E. 195), are not in any way parallel cases. In each of them the injured party was being carried by the company under a contract, and at the time of the accident was riding at the place on the train provided by the defendant for his carriage, while here the plaintiff was riding in a car obviously not designed for the carriage of passengers, although a car for that purpose was, to his knowledge, attached to the train. In the two cases referred to the injured parties were riding where the company intended them to ride, while here the plaintiff was riding at a place where he knew the company did not intend passengers to ride.

It follows from these views that the judgment of the court below must be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.                    REVERSED.