Argued June 24, reversed July 14, 1914.

## GRAHAM v. CORVALLIS & E. R. CO.

(142 Pac. 774.)

**Trial—Remarks of Counsel—Duty of Court.**

1. In an action against a local railroad company for personal injuries, remarks of the attorney for plaintiff that the local line is one of the lines of the Southern Pacific System, and referring to the local line as the child of the Southern Pacific Company, and claiming that the doctors of the Southern Pacific Company and the local line are the same ones, were improper, and the court should have instructed the jury to disregard them entirely, and should have required counsel to desist from making such remarks.

Carriers—Injury to Passenger—Action—Admissibility of Evidence.

2.   In an action for injury to a passenger caused by the breaking of a rail, objections to the cross-examination of a witness for defendant as to a break in a rail two months after the accident five miles distant from the place of the accident should have been sustained.

> [As to derailment of train as evidence of negligence, see note in Ann. Cas. 1913E, 552.]

Carriers—Injuries to Passenger—Actions—Instructions.

3.   In an action for injuries to a passenger, an instruction that a railroad carrying passengers is not an insurer against accident nor responsible for accident which is unavoidable, but is held to the utmost care which can be exercised by human prudence, skill and diligence, is not error.

Pleading—Form of Allegation—Directness.

4.   A complaint, alleging that the defendant so carelessly conducted the running of its cars, and by reason of such carelessness and unskillful running of the cars and train and by reason of the unsafe condition of the track, one of the rails broke, causing an injury to the plaintiff, a passenger, is objectionable for failure to allege directly the condition of the track, instead of by recital.

Pleading—Objections and Waiver—Filing Answer.

5.   In an action for injuries to a passenger, where the complaint alleges that by reason of the defective condition of the track a rail broke, an objection because of the averment of facts by recital, instead of by direct allegation, is waived by filing an answer denying the facts as stated.

Carriers—Injuries to Passenger—Actions—Pleading.

6.   Where a complaint for injuries to a passenger alleges concurrent grounds of negligence, the proof of any of them is sufficient, though not all are proven.

From Lincoln: JAMES W. HAMILTON, Judge.

This is an action by Addie Graham against the Corvallis & Eastern Railroad Company, a corporation, to recover damages for personal injuries. From a judgment for $10,000 in favor of plaintiff, defendant appeals. The facts are set forth in the opinion of the court.          REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Messrs. McFadden & Clarke,* with oral arguments by *Mr. Mark V. Weatherford* and *Mr. Arthur Clarke.*

For respondent there was a brief with oral arguments by *Mr. Benjamin F. Jones* and *Mr. Albert Abraham.*

Department 1.    MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiff commenced this action to recover $25,000 for personal injuries, that she claims to have received while a passenger in one of the defendant's cars.    According to her complaint, on the 15th day of November, 1912, she purchased from the defendant, a ticket on the defendant's line, and paid therefor $1.50, and this ticket entitled her to be carried in its cars from Wren to Toledo, in this state.    She entered one of the defendant's cars on November 15, 1912, to be carried to Toledo.    The complaint, after alleging that the defendant is a corporation and a common carrier of passengers, alleges the following:

"That the said defendant, not regarding its duty in that behalf, while the plaintiff was such passenger, and in a passenger coach of the defendant, did on the 15th day of November, 1912, at a point on said railroad, a short distance west of said town of Chitwood, in said Lincoln County, Oregon, by its servants and agents so carelessly, negligently, and unskillfully conduct the running of said cars and railroad, *and, by reason* of such carelessness and negligence and unskillful running of said cars and train, *and by reason* of the unsafe, unsound and poor condition of the railroad track of the defendant aforesaid, *and by reason* of the unballasted condition of said track, and the fact that the rails of said railroad track were too light, old, worn, and the material therein crystallized, hardened, and no longer fit to be used, *and by reason* of the weak and decayed condition of the ties in said track, and the timbers in the bridge of said railroad, and the unstable manner in which they were fastened, *and by reason* of the carelessness, negligence and de-

fault of the said defendant, its agents and servants, in so attempting to run and operate said train upon said defective railroad in such manner, as aforesaid, *and by reason* of the carelessness, negligence and default of the defendant in not providing a safe track, roadbed, ties, bridge timbers and fastenings, and in permitting the said track, roadbed, ties, timbers and fastenings to get in the said unsafe condition aforesaid, and in failing to repair the same, *and by reason* of all of said matters and things combined, one of said rails broke, the track and bridge gave way, and the said car, whereon the plaintiff was riding as such passenger, as aforesaid, together with other cars attached to the same, jumped the track, and thereby caused the plaintiff to be thrown violently down and against the floor, seats, and interior of said car and the furnishings thereof, whereby plaintiff was greatly bruised and injured, and suffered great bodily injury, fright and nervous shock, and plaintiff's head, neck, body, arms and legs, spine, brain and nervous system were bruised, disordered and injured, and the muscles and ligaments of her arm torn, and plaintiff was caused great physical and mental suffering and nervous shock and her general health affected, *and, whereas* she was before a strong, healthy and sound woman, rendering her a permanent invalid and cripple, to her great damage in the sum of $25,000.''

The defendant filed an answer, denying most of the allegations of the complaint, and setting up affirmative matters of defense, at considerable length. The plaintiff filed a reply, denying all of the affirmative matter of the answer. The case was tried by a jury, and a verdict and a judgment were rendered in favor of the plaintiff for $10,000. The defendant appeals.

1. The first point made by the defendant refers to certain remarks made by one of the attorneys for the plaintiff, in stating the plaintiff's case to the jury. One of the attorneys for the plaintiff, in making the opening statement to the jury, *inter alia,* said:

"She [the plaintiff] then proceeded on her way home in King's Valley. I suppose you all know where King's Valley is. They got off at Wren, or some place, but next day, I think, one or two days afterward, the Southern Pacific Company, or Corvallis & Eastern, *a man attends to both of them,* and the Southern Pacific Company is the parent corporation of this. I think they ordinarily call them parents. This Corvallis & Eastern *is one of the lines of the Southern Pacific System.* This suit is against the Corvallis & Eastern *because it has a corporate name of its own,* and whether or not the Southern Pacific Company, *we should have sued them or not,* we are not looking for them here. We are simply looking at their child, the Corvallis & Eastern Railroad."

To which statements and remarks concerning the Southern Pacific Company, the defendant, by its counsel, objected, and the court sustained the objection. Counsel for the plaintiff, continuing his statement to the jury, said, also:

"Now, Drs. Johnson and Pernot, they run a hospital, and they are the doctors. *They are Southern Pacific doctors,* and if the Corvallis & Eastern doctors, I believe they are the Corvallis & Eastern's doctors, *but they might be the Southern Pacific doctors,* but *we claim they are the same ones.*"

Counsel for the defendant again objected to the reference to the Southern Pacific Company, which objection was overruled by the court. Counsel for the defendant excepted to said ruling. Counsel for the defendant contend that these references to the Southern Pacific Company were made for the purpose of causing the jury to believe that the defendant belonged to the Southern Pacific Company, and that the latter company was behind the defendant and backing it. They claim that these references to the Southern Pacific Company were made for the purpose of caus-

71 Or.—31

ing the jury to believe that a company of great wealth was behind the defendant, and thereby increasing the plaintiff's chances of obtaining a verdict, and enhancing the amount of the verdict, in case one should be obtained. There was manifestly some *motive* for making these references. Otherwise they would not have been made. In the first instance, the court held the references to the Southern Pacific Company improper, but did not instruct the jury to disregard them; but counsel, notwithstanding that the court held said references to be improper, again referred to said company in a manner calculated to create a belief in the minds of the jury that the Southern Pacific Company and the defendant were, in some manner, together in the case. We can see no reasonable excuse for these references to the Southern Pacific Company, unless they were made to influence the jury against the defendant. If the jury believed that the defendant was "a child" of the Southern Pacific Company, and one of the lines of its system, as counsel for the plaintiff stated, when not instructed to disregard said remarks, in finding their verdict, they would be liable to view the case more favorably to the plaintiff than they would if they understood that the defendant did not belong to the Southern Pacific System, and had no powerful backing. It is the common understanding among lawyers and judges that juries are more likely to find a verdict against a wealthy defendant than against one of moderate means. The jury may have formed the impression, from the remarks of counsel, that the Southern Pacific Company would, in some way, reimburse the defendant for what it might have to pay on the verdict, if one should be found. It is impossible to know what effect those remarks may have had.

They were clearly wrongful, and attorneys never make such remarks without a motive for doing so.

In *Tuohy* v. *Columbia Steel Co.*, 61 Or. 531 (122 Pac. 37), the court says:

"It has been frequently held that a willful attempt by plaintiff in a personal injury case to show that the defendant was protected by insurance constitutes reversible error. The ground for this holding is that a knowledge that the defendant has such protection might have a tendency to render jurors careless as to the amount of the verdict."

In Elliott's General Practice, Volume 2, Section 698, the author says, *inter alia:*

"So, it is improper for counsel to refer to facts not pertinent to the issue, but calculated to prejudice the case to the injury of the opposite party."

In 38 Cyc., pages 1497, 1498, it is said:

"It is highly improper, and ordinarily ground for reversal, for counsel in argument to tell the jury that defendant is insured, or has indemnity against any verdict rendered against him in the case on trial."

See, also, on this point, *Zimmerle* v. *Childers*, 67 Or. 465, 136 Pac. 352, where an analogous question was presented, and decided.

The remarks of the counsel in this case, were liable to cause the jury to believe that, although the Corvallis & Eastern Railroad Company was nominally the defendant, the *real* party was the "parent" Southern Pacific Company, as the former was stated to be "one of the lines" of the latter company, and the counsel seems to have expressed a doubt as to whether they should not have sued the Southern Pacific Company. These remarks having been seasonably objected to, the trial court should have held them to be improper and have instructed the jury to disregard them entirely,

and have required counsel to desist from making such remarks. The court held that some of them were not improper, but failed to instruct the jury to disregard any of them. We think this was error.

2. The defendant contends that the court below erred in permitting the plaintiff, over the objections of the defendant, on ·the cross-examination of Jacob Jacobson, a witness for the defendant, to ask said witness concerning a rail of the defendant that was broken *two months after* the occurrence of the accident, which is the basis of this action, at a point on the defendant's road *five miles distant from the point at which th*e *accident complained of occurred.* This evidence was objected to as *irrelevant,* and not proper cross-examination. The objections were overruled, and an exception was taken, and the witness then testified that a rail was broken at a point five miles distant from the point where the accident complained of occurred, two months *after* the plaintiff was hurt. This witness had testified in chief concerning the roadbed where the accident occurred, as to the ballast at that point, as to the ties at that point, and as to the roadbed there. But he did not testify in chief as to the condition of the rails or road at the point where the other broken rail was found, which was five miles distant from the point where the accident occurred, nor did he testify in chief as to the condition of the rails or roadbed of the defendant *generally.* The accident occurred at a certain point on the defendant's road, and the condition of the roadbed and rails at that point was a fact in issue; but the condition of the roadbed or the rails at a point five miles distant therefrom two months after the accident occurred was not a matter in issue. Proof that a rail of the defendant five miles from the place of the accident and two months after the accident

occurred was broken or crystallized did not tend to prove that a rail at the place of the accident was in bad condition.

Abbott, in his Trial Evidence (2 ed.), page 724, says:

"The mere existence of defects in a structure, at other places than where the casualty occurred, as, for instance, a defect in a track, half a mile away from the scene of a railway wreck, is not evidence that a similar defect existed at the place of the casualty, and caused it."

The same author, at page 722, of the same volume, says:

"Evidence of other specific instances of negligence, on the part of the defendant or the servant, whose misconduct is alleged, independent of the negligence in question, is not competent, because raising a collateral issue."

In Elliott on Evidence, Volume 3, Section 2512, the authors say:

"For the purpose of showing the existence of the defect, it is competent to prove the condition of the place, where it has remained unchanged for several days before or after the accident. But evidence that *other sidewalks* in the neighborhood were out of repair is generally inadmissible."

It would not have been relevant for the defendant to prove that its track was in good condition at Toledo, because that fact would not have tended to prove that the track was in good condition at the point where the accident occurred.

Section 725, L. O. L., says:

"Evidence shall correspond with the substance of the material allegations, and be relevant to the questions in dispute. Collateral questions shall therefore be avoided."

The trial court erred in overruling the objections to said evidence.

3. The defendant contends, also, that the trial court erred in giving the following charge to the jury:

"A railway carrying passengers, is required to use the utmost care in the management and operation of its trains, and in the construction and keeping in repair of its track, which can be exercised by human prudence, skill and diligence. A railway company is not an insurer against accident, nor responsible for accident, which is unavoidable, but is held to that degree of care which is termed *the utmost care which can be exercised by human prudence, skill and diligence.*

We think that this charge goes to the limit of the law. Counsel for the defendants have referred to a large number of cases that state the rule not quite so unfavorably to the carrier of passengers as that announced in the above charge. We have examined these cases. Few of them state the rule in the same words. The rule as stated by them is substantially the same as that given in Section 1585 of Volume 4 of Elliott, Railroads, which is as follows:

"It seems to us that the expressions in some of the cases *are too strong,* since they convey the meaning that the carrier is liable absolutely and at all events. We do not doubt that the carrier is bound to exercise the highest *practicable degree of care,* and that the failure to exercise such care constitutes actionable negligence, but we do not believe that a carrier is bound to anticipate and provide against all occurrences which may be conceived by the mind of man. If *the highest practicable degree of care* is exercised, there is no negligence, although there may be an occurrence resulting in injury to a passenger."

There are many cases that agree with Elliott, but there are a large number that state the rule substantially as the court below stated it.

In 2 Hutchinson, Carriers (3 ed.), Section 895, the author says:

"In consideration, therefore, of the hazards incident to the modern modes of travel and the increased dangers to life and limb to which such modes have given rise, the law very justly holds that, while the carrier of passengers does not warrant the safety of his passengers, as the common carrier does that of goods, he is bound to provide for their safe conveyance, as far as human care and foresight will go, or, as some courts have expressed it, to exercise for the safety of his passengers while in his conveyance the highest or utmost degree of care and diligence which human prudence and foresight will suggest, in view of the character and mode of conveyance employed."

In Section 2720, Volume 2, of his Commentary on Negligence, Mr. Thompson says:

"The carrier is under a duty to carry the passenger safely, so far as human care, foresight and skill will enable him to do it."

In Moore, Carriers, page 594, the author says:

"While the common carrier of passengers is not an insurer of the safety of its passengers, the rule is firmly established that it is bound to use the utmost care so far as human skill and foresight can go, to guard against the possibility of accidents arising from the condition of its road and the machinery used in the transportation of passengers."

In *Radley* v. *Columbia R. Co.*, 44 Or. 341 (75 Pac. 216, 1 Ann. Cas. 447), this court says:

"A railway company owes to its passengers the highest possible degree of skill in transporting them, and in the management and operation of the train, and is liable for slight negligence."

In *Budd* v. *United Carriage Co.*, 25 Or. 321 (35 Pac. 663, 27 L. R. A. 279), the court says:

"But it is not meant by this language that a stage proprietor is a warrantor of the safety of his coach, its equipments, the competency of his driver, or the other appliances used, but that he is bound to use the utmost diligence and care in making suitable provisions for those whom he carries": See, also, *Kelly* v. *Lewis Inv. Co.,* 66 Or. 1 (133 Pac. 826).

The charge cited *supra* goes to the verge of the law, but we do not deem it necessarily inconsistent with the rule announced in *Radley* v. *Columbia R. Co.,* 44 Or. 341 (75 Pac. 216, 1 Ann. Cas. 447), and hence we do not hold it to be erroneous.

4. Assignments 3, 4 and 6 raise the question as to the sufficiency of the complaint. The counsel for the defendants contend, also, that the complaint charges but one thing as the basis of its claim of damages, and that is the negligent operation of the train. The complaint does directly allege that the defendant did so carelessly, negligently and unskillfully conduct the running of the cars and railroad, and *by reason* of such carelessness and unskillful running of said cars and train, and *by reason* of the unsafe, unsound and poor condition of the railroad track, *and by reason* of the unballasted condition of said track and the fact that the rails of said railroad track were too light, old, worn and the material therein crystallized, hardened, and no longer fit to be used, etc., one of said rails broke, the track and bridge gave away, the said car jumped the track, and caused the plaintiff to be violently thrown against the floor, seats, and the interior of the car, etc.

The allegation is direct that the defendant "so carelessly, negligently and unskillfully conducted the running of said cars and railroad." The complaint then alleges, *"and by reason* of the unsafe, unsound and poor condition of the railroad track,"* etc., the accident

occurred.   It fails to allege *directly* that the railroad
track was unsafe, unsound, or that there was any de-
fect in it, or anything wrong with the track or rails;
but it alleges that, *by reason* of the default of the de-
fendant in not providing a safe track, roadbed, ties,
bridge timbers and fastenings, etc., the injury resulted.
The complaint should have alleged *directly* that cer-
tain defects existed.   The allegations of the defects are
*indirect,* and in the nature of *recitals.*

Professor Sunderland, in 31 Cyc., page 71, says:
"Material facts must be alleged *directly,* and not by
way of *recital.*"

In *Third Nat. Bank* v. *Angell,* 18 R. I. 4 (29 Atl. 501),
the court says:

"The defendants also suggest that the declaration
is bad because the judgment is stated only as induce-
ment, under a 'whereas,' and that a material fact such
as the obtaining of the judgment, which is traversable,
should be directly alleged.   Doubtless the criticism is
well founded, but the defect is merely a defect of form
and not substance.   Formal defects can be taken
advantage of only by special demurrer and not on a
general demurrer like the present."

In *Fuller Desk Co.* v. *McDade,* 113 Cal. 363 (45 Pac.
694), the court says:

"In order, therefore, to make out that the sheriff
committed an actionable wrong, when, as in this in-
stance, it is not charged *in terms* that he converted
the property to his own use, facts should be stated to
show that upon notice of the owner's claim he refused
to surrender the property.   We think it must be held
that such facts appear in the complaint here, * * true,
rather *by way of recital,* when they should have been
alleged *directly;* but the demurrers interposed by de-
fendants do not include this fault among the grounds
they specify, and under the rule requiring objections
based on such defects to be taken by special demurrer,

we are not at liberty to treat the complaint as bad on that account.''

In *Spikor* v. *Bohrer*, 37 W. Va. 258 (16 S. E. 575), the *syllabus* is as follows:

''It is a general rule of pleading that whatever facts are necessary to constitute the cause of action, they must be *directly,* and distinctly stated and *not by way of recital.*''

The complaint in this case is subject to criticism, for the reason that many of its allegations are not direct, but in the nature of recitals. It was not attacked, either by demurrer or motion, so far as the record shows. The answer of the defendant denies every allegation contained in that part of the complaint, to which the defendant objects.

5. The complaint is not defective, in that an allegation necessary to the plaintiffs' right of action is entirely omitted; but the necessary facts are stated in an improper manner. The necessary facts should have been alleged *directly,* and not by way *of a recital.* The necessary facts are not omitted, but they are *defectively* stated. Where all the necessary facts are in the complaint, but some of them are defectively stated, and the defendant answers, denying the facts so stated, such answer is a *waiver* of the right to object to the matters defectively pleaded: *Davis* v. *Wait,* 12 Or. 425 (8 Pac. 356); *White* v. *Spencer,* 14 N. Y. 247; *Olds* v. *Cary,* 13 Or. 365 (10 Pac. 786); *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Anderson* v. *N. P. L. Co.,* 21 Or. 282 (28 Pac. 5); *Drake* v. *Sworts,* 24 Or. 201 (33 Pac. 563); *Chang Sing* v. *Portland,* 37 Or. 71 (60 Pac. 718); *Hughes* v. *McCullough,* 39 Or. 373 (65 Pac. 85); *Creey* v. *Joy,* 40 Or. 28 (66 Pac. 295). We hold that the defendant, by answering, waived the defects in the complaint, and that there is no merit in

the assignments of error based on the contention that the complaint is fatally defective.

6. The defendant contends, also, that according to the complaint, the negligent operation of the train, and the defects in the railroad and rails, etc., were *concurrent causes* of the injury to the plaintiff, and that the plaintiff had no right to recover, under the allegations of the complaint, without proof that the train was negligently operated, and that, as there was no proof of that fact, the motion for a judgment of nonsuit should have been allowed. *Whipple* v. *Michigan C. R. Co.*, 143 Mich. 41 (106 N. W. 690), was an action against a railroad for personal injuries, and the complaint, like the complaint in this case alleged, various acts of negligence on the part of the defendant, and concluded thus:

"When on account of the fault and negligence of the defendant, *as above set forth,* the tracks and rails of the said defendant, on which said train was running between the said stations of Vienna and Alexis, at the place aforesaid, spread out and became out of place, and that by reason thereof, the said train became derailed while running at a high and excessive rate of speed, and was then and there wrecked and destroyed."

Counsel for the defendant in that case made the point that the defendant makes here, and, commenting thereon, the court in that case says:

"It is contended that, to entitle the plaintiff to recover under this declaration, it was necessary to show: First, that the cause of the accident was the spreading of the track; second, that the track spread *because of the combination of circumstances averred, viz.,* that the rails were not fastened together, that they were not spiked to the ties, and that the ties were decayed and rotten, and that each element of this combination was due to the negligence of the defendant. * * The rule is elementary that, in an action of negligence, it is

sufficient for the plaintiff to prove sufficient of the substantive charges of negligence contained in his declaration to make out a liability in fact, although negligent acts may be charged which are not proven. * * In the present case, if the rails, in fact, spread from *any* of the causes alleged, negligence on the part of the defendant might be found, and the fact that the declaration alleged *other* causes which might have contributed to the spreading of the rails does not result in the case being outside of the allegations.''

In this case, if the accident was caused by the cars jumping the track, and the jumping the track was caused by any of the negligent acts alleged in the complaint, a jury might properly find for the plaintiff, although some of the acts of negligence charged in the complaint, were not proven.

We find that the trial court erred in not instructing the jury to disregard entirely the remarks made by counsel for the plaintiff, concerning the Southern Pacific Company, in stating the plaintiff's case to the jury, and in overruling the objections of the defendant to the questions asked by counsel for the plaintiff, on the cross-examination of Jacob Jacobson.

The judgment of the court below is reversed, and a new trial granted.    REVERSED AND REMANDED.

Mr. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.