Argued October 19, affirmed November 15, 1927.

FRANK C. BRAMWELL, SUPERINTENDENT OF BANKS, v. BUD ROWLAND.

(261 Pac. 57.)

Appeal and Error—Venue—Change of Venue is Within Court's Discretion, and Ruling will not be Disturbed on Appeal, in Absence of Abuse.

1. Application for change of venue is addressed to discretion of trial court, and granting or refusing of change will not be disturbed on appeal, unless there is manifestly an erroneous exercise of discretion.

Venue—Denial of Change of Venue of Action by Superintendent of Banks on Note on Ground That Many Inhabitants of County were Depositors of Insolvent Bank Held not Erroneous.

2. In action by superintendent of banks on note payable to insolvent bank, application by defendant for change of venue, based on affidavits alleging that large portion of inhabitants of county were depositors of bank, and financially interested in outcome of action, and opposed by affidavit showing only small portion of inhabitants were depositors, and that no prejudice existed against defendant, *held* properly denied.

———

1. See 27 R. C. L. 827.
2. See 21 R. C. L. 577.

Pleading—Allegation of Insolvency is Statement of Ultimate Fact, not Conclusion of Law.

3. Allegation that one is insolvent is not statement of conclusion of law, but states the ultimate fact.

Pleading—Allegation of Insolvency Made by Way of Recital That Plaintiff was Liquidating Affairs of Insolvent Bank Held Defect in Form, not Substance.

4. In action by superintendent of banks on note payable to insolvent bank, allegation of insolvency that superintendent was "liquidating affairs of said insolvent bank," made by way of recital, and not directly, is defect in form, not in substance.

Bills and Notes—Amendment of Complaint by Superintendent of Bank on Note, to Allege Insolvency of Payee Bank Held not Error, Where Defendant was not Surprised (Or. Laws, § 102).

5. Under Section 102, Or. L., providing for correction of mistakes in pleadings, complaint by superintendent of banks in charge of affairs of insolvent bank on note payable to bank was properly permitted to be amended to specifically allege insolvency of bank, where amendment did not take defendant by surprise.

Pleading—Court is not Deprived of Power to Amend Pleadings to Conform to Proof by Opposition to Admission of Testimony.

6. In action by superintendent of banks in charge of insolvent bank on note payable to bank, fact that opposition was made to admission of testimony did not deprive court of power to amend pleadings so that it would conform to proof.

Pleading—Complaint, Failing to State Cause of Action, may be Amended Within Trial Court's Discretion by Adding Necessary Averment (Or. L., § 102).

7. Under Section 102, Or. L., providing for amendment of pleadings to correct mistakes, complaint which fails to state a cause of action may be amended in sound discretion of trial court by adding necessary averment so that it will state cause of action.

Estoppel—Fraud and Estoppel Both Depend on Representation Which is Foundation of Cause of Action or Defense in Fraud, and is Basis for Preventing Representor Changing His Position in Estoppel.

8. Fraud and estoppel *in pais* both depend on a representation which in fraud is foundation of cause of action or defense based on reliance inflicting injury, and in estoppel is basis for preventing representor from shifting his position to injury of representee.

Estoppel—Cause of Action Exists When All Elements of Fraud are Present, but All Elements of Estoppel may be Present and No Cause of Action Exist.

9. A cause of action exists when all elements of fraud are present, but not necessarily when all elements of estoppel are present; the function of estoppel being to preserve facts in favor of representee.

7. See 21 R. C. L. 580.

Fraud—Reliance on Representation is Necessary Element of Fraud.

10. A necessary element of fraud is that party was injured by relying on representation.

Estoppel—Reliance on Representation, Making It Inequitable for Representor to Shift Position, is Necessary Element of Estoppel.

11. In estoppel, it must appear that representee relied so far on representation that it would be inequitable to permit representor to shift position his representation announced.

Estoppel—Admission That Debtor of Defendant, Sued on Note to Bank, was Insolvent, Did not Show Reliance on Representation by Bank Cashier That Note was Paid Out of Defendant's Account With Debtor Necessary to Estop Bank to Deny Payment.

12. In action by superintendent of banks on note payable to insolvent bank, in which defendant set up estoppel on bank to deny payment of note, based on statement of cashier that note had been paid by charging out of defendant's account with another amount of note, and by failure of bank to demand payment, proof of inquiry by defendant's counsel to plaintiff's counsel, in which it was admitted that defendant's debtor, to whom cashier looked for payment of note, was insolvent, does not constitute proof that defendant relied on cashier's representations necessary to show estoppel.

Appeal and Error—Exceptions to Parts of Instructions on Estoppel Stating Plaintiff Would not be Bound by Representations Did not Point Out Error in Requiring Proof of Scienter.

13. In action by superintendent of banks on note payable to insolvent bank, in which defendant claimed bank was estopped to deny payment by representations of its cashier, exceptions to instruction on estoppel to all parts of instruction stating that plaintiff would not be bound if cashier made representations did not point out error in requiring proof of scienter.

Appeal and Error, 3 C. J., p. 900, n. 96, p. 922, n. 40, p. 925, n. 47; 4 C. J., p. 1068, n. 16, 22, p. 1069, n. 23.

Estoppel, 21 C. J., p. 1117, n. 91, p. 1118, n. 2, p. 1119, n. 12, 13, p. 1120, n. 14, 15, p. 1122, n. 32, p. 1125, n. 46, p. 1126, n. 51, p. 1253, n. 4, 7.

Pleading, 31 Cyc., p. 70, n. 97, p. 71, n. 17, p. 361, n. 28, p. 367, n. 1, p. 368, n. 9, p. 393, n. 41, p. 435, n. 35.

Venue, 40 Cyc., p. 117, n. 30, 32, p. 135, n. 24, 26, p. 164, n. 54.

From Lincoln: G. S. SKIPWORTH, Judge.

Department 1.

This is an action upon a promissory note in the sum of $450. The complaint, in the usual form, alleges the note, its maturity, nonpayment and attor-

ney's fees, and asks for judgment; it contains the additional allegation that the plaintiff is the superintendent of banks and that, while acting as such, he took charge of the Western State Bank, payee of the note, and that he "has at all times been and now is liquidating the affairs of said insolvent bank."

The answer admitted that the defendant executed the note, but denied there was anything due upon it. As an affirmative defense, the answer alleged that when he executed the note and delivered it to the bank, one C. O. Hawkins was the managing officer of the bank, and that later Hawkins represented to the defendant that the note had been paid out of funds owing to him by the Oregon Spruce Company. The answer continues:

"That the defendant herein relied upon the said statements of the said C. O. Hawkins relative to the payment of the said note and believed the same to be true and that no further demand was ever made upon the defendant herein for the payment of the said note nor did he have any knowledge of the fact that the said note had not been paid until the filing of this action and that the Oregon Spruce Company has become insolvent and is now insolvent and its affairs are in the hands of a receiver, and that the plaintiff herein is estopped at this time to deny the said statements * * ."

The reply denied the new matter of the affirmative defense except it admitted that Hawkins was cashier of the bank. After the issues had been joined, the defendant moved for a change of venue on the ground that the inhabitants of Lincoln County, where this action was commenced, were so prejudiced against the defendant that he could not expect an impartial trial in that county. The motion was denied and the court's action in so doing is assigned as error.

After the jury had been impaneled, the defendant objected to any further proceedings on the ground that the complaint did not state a cause of action. More particularly, counsel for defendant stated the basis of his objection as follows:

"They have not alleged that the bank is insolvent."

The court thereupon took a recess for one day so that the plaintiff could amend his complaint by alleging the insolvency of the bank. The following amendments were made:

"That on the 5th day of November, 1924, the Western State Bank of Newport, Oregon, had assets of the cash market value of approximately the sum of One Hundred Seventy-Eight Thousand Five Hundred and no/100 Dollars ($178,500.00), and on the said date said Western State Bank had liabilities in approximately the sum of Three Hundred Fifty-Seven Thousand and no/100 Dollars ($357,000.00). That on said 5th day of November, 1924, the actual cash market value of the assets of said Western State Bank were insufficient to pay the liabilities of said bank. That by reason thereof, said Western State Bank was on said 5th day of November, 1924, and ever since said date has been and now is, insolvent.

"That Frank C. Bramwell, the plaintiff herein, is the duly appointed and acting Superintendent of Banks of the State of Oregon, and has been such Superintendent of Banks at all times and dates since the 3rd day of December, 1920. That as Superintendent of Banks for the State of Oregon the plaintiff herein did, on or about the 5th day of November, 1924, in pursuance to a resolution of the Board of Directors of the Western State Bank of Newport, Oregon, and pursuant to law, take charge of the Western State Bank of Newport, Oregon, and the assets of said bank, for the purpose of liquidating its affairs. That since said 5th day of November, 1924, said Frank C. Bramwell, as Superintendent of Banks of the State of

Oregon, has been and now is, liquidating the affairs of the said Western State Bank.''

When the amended complaint was tendered for filing, the defendant did not claim surprise, or state that the allegations thereof would put him at a disadvantage; the defendant was allowed time to familiarize himself with the new pleadings and later the court proceeded with the trial. The defendant assigns as error the allowance of the amendment.

Upon the issue created by defendant's allegations of estoppel and plaintiff's denial thereof, the court, after stating to the jury the contentions of both sides, instructed the jury upon the law of estoppel and applied its statement of the law to whatever views the jury might take of the facts. The defendant excepted to these instructions.                    AFFIRMED.

For appellant there was a brief over the name of *Mr. H. T. McCulloch,* with an oral argument by *Mr. C. M. Idleman.*

For respondent there was a brief over the name of *Messrs. English & Krause,* with an oral argument by *Mr. L. G. English.*

ROSSMAN, J.—The motion for change of venue was accompanied by the affidavit of the defendant, wherein he averred that the Western State Bank failed for a large amount of money; that its debts far exceeded its assets; that a large proportion of the inhabitants of Lincoln County were depositors in the bank and were financially interested in the outcome of this action, and that their interest was adverse to him. The affidavit further sets forth that Lincoln County is sparsely settled and that the vast majority of all jurors who might be drawn to hear this action

would be depositors in the former bank or interested as friends or relatives of the depositors and would, therefore, be prejudiced against him. In opposition to the motion, plaintiff filed the affidavit of the deputy superintendent of banks in charge of the liquidation of this bank. He stated that from his personal knowledge only a small portion of the inhabitants of Lincoln County were depositors in the bank, and that no prejudice or ill feeling existed against the defendant; that he had examined the jury list and found that only a very small percentage of the jurors were depositors in this bank. He also set forth that expense and inconvenience would be occasioned if the place of trial were changed.

1, 2. Counsel are apparently agreed that an application for a change of venue is addressed to the discretion of the trial court and that its action in granting or refusing the change will not be disturbed on appeal unless there is manifestly an erroneous exercise of the discretion to the injury of the party applying. This rule has been enunciated so many times by this court that it is unnecessary to cite authorities. Defendant's application for a change of venue was passed upon by an able trial judge. The contentions stated in the defendant's affidavit, and determined adversely to him by the lower court, were quite simple; we find nothing which would warrant us in concluding that the determination of the motion was unsound. We find in *State* v. *Pomeroy,* 30 Or. 16 (46 Pac. 797):

" * * In the case at bar it does not appear that any difficulty whatever was experienced in obtaining an unbiased jury, a circumstance which leads to the conclusion that the accused suffered by the refusal to grant the motion no injustice, so that it is not obvious

that there was an abuse of its discretion by the trial court. * * "

The same observation is applicable to this case. We find, therefore, no error in the denial of the motion for a change of venue.

We come now to the contention of the defendant that the court erred in allowing the amendment to the complaint. It is the defendant's contention that the original complaint did not allege that the Western State Bank was insolvent and that, therefore the complaint did not state a cause of action. From this he draws the conclusion that the court was without authority to allow the amendment. It will be noticed that the original complaint contained the statement:

" * * That since the 5th day of November, 1924, the said Frank C. Bramwell, as Superintendent of Banks for the State of Oregon, has at all times been and now is liquidating the affairs of said insolvent bank."

The defendant did not test the sufficiency of the complaint by motion or demurrer.

3-5. To allege that one is insolvent is not the statement of a conclusion of law but states the ultimate fact: *Greensfield* v. *Brownell,* 12 N. W. 192 (76 Pac. 310); *Gray* v. *Brunold,* 140 Cal. 615 (74 Pac. 303). The worst that can be said concerning the allegation of insolvency is that it was alleged by way of recital and not directly; but this court has held that recital is a defect in form and not in substance: *Graham* v. *Corvallis & E. R. Co.,* 71 Or. 477 (142 Pac. 774). But, apart from the foregoing, we believe that the amendment was proper. Code pleading not only wrought a change in the phraseology of the pleadings, but also made provision for a liberality of amendment

unknown to common-law pleadings. Section 102, Or. L., provides:

"The court may * * at any time before the cause is submitted, allow such pleading or proceeding to be amended, (1) by striking out the name of any party, or (2) by correcting a mistake in the name of a party, or (3) a mistake in any other respect, or (4) * * ."

The numerals above are our own. It is with the third clause that we are concerned; that is, the power conferred upon the court to permit a party to correct a mistake in his pleadings by amendment. If there was a flaw in the pleading, it is quite clear that it occurred through the mistake of the pleader, and the above section of the Code was intended to authorize the correction of the mistake by amendment. This the authors of the Code deemed a wiser course than the useless ceremony of dismissing the case and requiring the party to begin anew. We find many illustrations in our precedents of the application of this power; thus, where this court was satisfied that the rights of the adversary were not prejudiced thereby, we have sustained the discretion of the trial court in allowing a wide range of amendments. In *Wild* v. *Oregon Short Line etc. Ry. Co.*, 21 Or. 159 (27 Pac. 954), the party was allowed to amend his pleading during the trial so as to allege the incorporation of the defendant. In *Nunn* v. *Bird*, 35 Or. 515 (59 Pac. 808), where the assignee of a chattel mortgage sued to recover possession of the mortgaged property, and the defendant plead usury, it was held proper to allow an amendment to the answer setting forth that the usurious character of the instrument was well known to the plaintiff. In *Hammer* v. *Downing*, 39 Or. 504 (64 Pac. 651, 65 Pac. 17), "grain,

namely, wheat," was amended to read "grain or
pork." In *Farmers' Bank* v. *Saling,* 33 Or. 394 (54
Pac. 190), the plaintiff described the note he sued
upon as dated September 9, 1892. There was ac-
tually a note of that date, but it was held proper to
allow an amendment describing the note as dated
September 9, 1893. In *Davis* v. *Hannon,* 30 Or. 192
(46 Pac. 785), the answer merely denied the plain-
tiff's ownership of the property in controversy. It
was held proper to allow an amendment alleging that
the plaintiff fraudulently took and held the property.
In *Koshland* v. *Fire Assn.,* 31 Or. 362 (49 Pac. 865),
it was held proper to permit the defendant to amend
by alleging an insurable interest in plaintiff's as-
signor at the time of the loss. In *Filkins* v. *Portland
Lumber Co.,* 71 Or. 249 (142 Pac. 578), the amend-
ment raised the allegations of damages in the com-
plaint from $2,500 to $7,500. In *Doyle* v. *Southern
Pacific Co.,* 56 Or. 495 (108 Pac. 201), the complaint
had specified several acts of negligence; it was held
proper to allow an amendment adding a failure to
maintain a lookout. The same was done in *Hansen*
v. *Oregon-Washington R. & N. Co.,* 97 Or. 190 (188
Pac. 963, 191 Pac. 655). In *Pacific Company* v.
*Cronan,* 82 Or. 388 (161 Pac. 692), the defendant was
permitted to amend his answer so as to deny material
matters previously admitted.

6, 7. In these and other cases, the amendments
were in furtherance of justice and aided the pleadings
to state the matter originally intended. Since the
amendment did not take the adversary by surprise,
the trial court did not abuse its discretion in allow-
ing the same. The fact that opposition was made to
the admission of testimony did not deprive the court
of the power to amend the pleadings so they would

conform to the proof: *Ridings* v. *Marion County,* 50 Or. 30 (91 Pac. 22). Since this section of our Code confers power to amend so as to correct mistakes, a complaint which fails to state a cause of action may be amended in the sound discretion of the trial judge by adding the necessary averment so that it will state a cause of action: *Wells* v. *Hansen,* 97 Kan. 305 (154 Pac. 1033, Ann. Cas. 1918D, 230, L. R. A. 1916F, 566); *Lemon* v. *Hubbard,* 10 Cal. App. 471 (102 Pac. 554); Abbott's Trial Brief, 1802. In *Holton* v. *Holton,* 64 Or. 295 (129 Pac. 532, 48 L. R. A. (N. S.), 779), relied upon by the defendant, the complaint failed to confer jurisdiction upon the court of the subject matter. In our present case, the defendant was not surprised by the amendment, because his affidavit for change of venue alleged the insolvency of the bank. We are well satisfied that no error was committed when the amendment was allowed.

Let us now consider the court's instructions upon the law of estoppel. The defendant's criticism of these instructions is thus stated in his counsel's brief:

" * * estoppel was the only defense in this case. It was contended by the defendant that C. O. Hawkins, the cashier of the bank, and who was also * * the general manager of the Oregon Spruce Company, stated to him that he would charge out of the defendant's account with the Oregon Spruce Company, which was indebted to the defendant * * the amount of the note and charge his account in the bank with the same amount, and thus pay off the note. If C. O. Hawkins * * intended at the time he made the statement to make the credits and to pay off and deliver over the note to the defendant herein, and he failed to do so, and the Oregon Spruce Company * * went into bankruptcy, and the bank failed * * the court would undoubtedly say * * that the doctrine of estoppel could

be invoked, whether there was any fraudulent intent at the time the promise was made or not."

8, 9. We do not understand the court's instructions requiring the jury to find that the defendant had been defrauded before it could apply in his favor the doctrine of estoppel. Fraud and estoppel *in pais* are alike in respect that each is dependent upon a representation. In fraud, the representation is the foundation of the cause of action or of the defense; reliance upon it has inflicted an injury for which the party seeks redress or rescission. In estoppel, the representation, whether expressed directly in words or transmitted by any of the infinite methods by which a thought may be communicated from one to another, has made known the party's position in regard to a material fact; from this position he would like to retreat, but the representee desires to hold him to that position. The injury has not yet been inflicted but the party invoking the estoppel says that, unless the representor is prevented from shifting his attitude, an injury will occur to the representee. When all of the elements of fraud are present a cause of action exists; all the elements of estoppel may be present and yet no cause of action exists because estoppel is not a cause of action. The function of estoppel is to preserve facts in favor of the representee. Thus, one writer has said:

"To ·use the language of naval warfare, estoppel must always be either a mine-layer or a mine-sweeper; it can never be a capital unit." Spencer, Bower on Estoppel by Representation, p. 12.

In fraud the representee endeavors to establish a discrepancy between the representation and the truth; in estoppel he endeavors to show that it would be inequitable to permit the truth to be known.

10, 11. In determining who can invoke the doctrine of estoppel and the circumstances under which it comes into operation, the law of estoppel seizes upon elements which are quite similar to those of fraud but stops short of embracing all of the elements of fraud. A necessary element of fraud is that the party was injured by relying upon the representation. In estoppel it must appear that the representee relied so far upon the representation that it would be inequitable to permit the representor to shift the position which his representation announced. Before applying these principles more particularly to the facts of our case, let us refer to the answer and to the testimony to make sure what representation the defendant contends Hawkins, as cashier, made. The answer sets forth that Hawkins "represented to the defendant that the said note * * had been paid." The defendant testified that he and Mr. Hawkins, while the latter was acting on behalf of the Spruce Company went over his account with the latter company and came to the conclusion that the Spruce Company owed him approximately $3,600; that, thereupon it was agreed that the Spruce Company should pay him $3,000, which would be deposited in his favor in the Western State Bank; that the amount due him over $3,000 should be used by the Spruce Company in taking care of his note. Evidently, this is not the representation upon which the defendant relied because it is purely promissory in character, was made by Hawkins in his capacity as representative of the Spruce Company, and, further, is not the representation alleged in the answer. He further testified:

"Q. Well, what did he say relative to the payment of that note, at that time, as to the manner in which it had been paid? A. At that time, he did not say.

"Q. Well, on May 8th? A. On May 8th?

"Q. Yes. A. He said he took out the money to take care of the note and we settled it.

"Q. That was C. O. Hawkins, the cashier of the Western State Bank? A. Yes, sir."

12. The defendant also testified that the bank never demanded payment of the note. Hawkins, as a witness, testified that when he, on behalf of the Spruce Company, and the defendant collected the amount due the defendant, he took into consideration the $450 note and told the defendant that the Spruce Company would have to take care of his note at the bank upon the final settlement of their accounts. He denied that he ever told the defendant that the note had been paid. Thus, we see that the estoppel upon which the defendant relies arose apparently out of the statement which he says Hawkins, the cashier, made that the note had been paid and the bank's conduct thereafter in not demanding payment. But the defendant nowhere says that he relied upon Hawkins' statement. The nearest approach to any proof of reliance was an inquiry by defendant's counsel to counsel for the plaintiff: "I presume that counsel will admit that the Oregon Spruce Company is in the hands of a receiver of this court," to which the reply was "We will" and the additional admission that the Spruce Company is insolvent, but this does not constitute proof that the defendant relied upon Hawkins' representations. The insolvency of the Spruce Company does not prove reliance or nonreliance. Reliance upon the representation is one of the fundamental elements of estoppel. Thus, it is said:

"The rule is fundamental that unless the representation of the party to be estopped has also been really acted upon,—the other party acting differently,

that is to say, from the way he would otherwise have acted, so that to deny the representation would prejudice him,—no estoppel arises." Bigelow on Estoppel (6 ed.), p. 694.

"Whatever may be the real intention of the party making the representation, it is absolutely essential that this representation, whether consisting of words, acts, or silence, should be believed and relied upon as the inducement for action by the party who claims the benefit of the estoppel and that, so relying upon it and induced by it, he should take some action. The cases all agreed that there can be no estoppel, unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action. Finally, this action must be of such a nature that it would have altered the legal position of the party for the worse unless the estoppel is enforced. * * " Section 812, Pomeroy, Equity Jurisprudence.

While evidence that the defendant relied upon the representation is totally wanting, there was evidence that instead of relying upon the representation which the defendant says Hawkins made, the defendant relied upon 1,200,000 feet of logs placed in the river by the Spruce Company, upon which the defendant filed a lien for all sums due him from the Spruce Company. Likewise, we have the fact that the defendant never asked for the return of his note. But since failure to prove reliance is not mentioned in the briefs nor in the argument, we will not make our determination of this case turn upon that matter.

The elements of estoppel, as stated by Bigelow, are:

"A plea of estoppel *in pais* by misrepresentation should ordinarily show: 1. That the party sought to be estopped has made a representation with the intention of influencing the conduct of the pleader in

a manner inconsistent with the claim set up.   2. That the misrepresentation was known by the party making it to be false, and that the pleader did not know that it was false, but, on the contrary, believed it to be true.   But the scienter is not alleged in England or in all our States.   3. That the pleader has acted upon such act or declaration.   4. That he will be prejudiced by allowing the truth of the admission to be disproved.''   Bigelow on Estoppel (6 ed.), p. 774.

The editor of Corpus Juris states the elements of estoppel by. representation in these words:

''In order to constitute this kind of estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice.   To constitute an 'estoppel *in pais*' there must concur an admission, statement, or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party.   There can be no estoppel if either of these elements are wanting. They are each of equal importance.''   21 C. J. 1119.

These same elements have been embraced in our previous decisions: *State* v. *Portland General Electric Co.,* 52 Or. 502 (95 Pac. 722, 98 Pac. 160); *Doerstler* v. *First Nat. Bank,* 82 Or. 92 (161 Pac. 386).   Since Bigelow wrote, a number of writers and courts have pointed out that occasionally the circumstances may be such that even an innocent representor should be estopped from shifting position from his previous representation to the actual truth.   Such a situation arose in *Ross* v. *Ferree,* 95 Iowa, 604 (64 N. W. 683). Here, the courts seize upon the doctrine which Pome-

roy in 2 Pomeroy's Equity Jurisprudence (3 ed.), Section 805, says is the bedrock upon which all instances of equitable estoppel must be founded; that is:

" * * when one of two innocent persons must suffer, he shall suffer who by his own acts occasioned the confidence and loss."

13. For illustrations see Williston on Sales, Sections 419 and 424, and 2 Pomeroy's Equity Jurisprudence, Section 805. For an excellent discussion, see Ewart on Estoppel, Chapter 8. The only possible misstatement of the law which we have been able to discover in the instructions is that the court, in stating to the jury the elements of estoppel, included scienter and told the jury that they must find that Hawkins, as cashier, knew that the note had not been paid; in an earlier portion of the instructions, the element of scienter was omitted. Scienter is included in the elements of estoppel set forth in *Oregon* v. *Portland General Electric Co., supra.* In our present case, if Hawkins, as cashier, made the representation and if the defendant changed his position for the worse in reliance upon the representation, it is very doubtful whether scienter would be a necessary element. However, the exception taken by the defendant to the court's instructions did not point out to the court this error in its instructions. The exception was:

"We except to all that part of the court's instructions which specified and stated that the plaintiff would not be bound if Mr. Hawkins made the statements which were claimed to have been made to him by the defendant herein as an officer of the Spruce Company."

This exception did not point out to the trial judge the error pressed upon us.

We find no error in the record, and the judgment of the Circuit Court is sustained.      AFFIRMED.

RAND C. J., and McBRIDE and COSHOW, JJ., concur.