Argned February 23; affirmed April 18, 1933

## BLY *v.* TRAVELLERS' INSURANCE CO.

(20 P. (2d) 1089)

*Lamar Tooze,* of Portland (Cake & Cake and Jaureguy & Tooze, all of Portland, on the brief), for appellant.

*Chas. M. Hodges,* of Portland (Robert L. Jewell, of Portland, on the brief), for respondent.

CAMPBELL, J. On June 29, 1931, plaintiff filed his complaint, alleging that he was in the employ of defendant from June 28, 1925, to May 31, 1929, as an insurance adjuster and investigator in defendant's office at Portland, Oregon. He alleged that the terms of his employment were that he should receive a certain fixed monthly salary and his expenses; that any sum of money that he would expend for and on behalf

of defendant, and for its benefit in the investigation of claims, defendant agreed to reimburse him. During the period of his employment, he had expended the sum of $1,812.53 and had received payment thereon totalling the sum of $1,170.40. He prayed judgment for the difference, $642.13.

The defendant filed its answer which virtually admitted the employment, the amount expended and the amount paid as alleged in plaintiff's complaint but denied any indebtedness. For a first, separate and affirmative defense, it alleged facts that would amount to an estoppel against the plaintiff. Its second and third separate defenses pleaded, in effect, payment.

The cause was presented to a jury and at the close of the evidence defendant moved for a directed verdict on the ground that the evidence showed a complete estoppel against plaintiff. The motion was overruled and the cause submitted. The jury returned a verdict for $642.13 in favor of plaintiff on which judgment was entered and defendant appeals.

The evidence shows that plaintiff was employed by defendant at its Portland office from February 7, 1924, to June 29, 1929; that he worked out of the Portland office under the directions of its chief adjuster in that office, Mr. Thomas R. Kelly. The evidence further shows that defendant advanced to its chief adjuster $175 for the purpose of taking care of the expenses incurred on behalf of the company by its employees operating out of the Portland office. These expenses were supposed to be paid by Mr. Kelly on the presentation of a claim and vouchers for the different amounts. Then, each month Mr. Kelly would forward these claims and vouchers to the home office, at Hartford, Conn., which would forward him a draft in his

favor covering all those claims so as to restore the fund in his hands, to the sum of $175. These vouchers were always made out on a form furnished by the company with the heading, "Account Traveling Expense. Re. Clarence E. Bly, Investigator". When plaintiff made out his monthly voucher, he signed his name at the bottom, with one exception (July, 1927), under the printed words, "Received Payment". This he did before he presented the voucher to Mr. Kelly, whether he had actually been paid or not. Plaintiff testified that shortly after Mr. Kelly took charge of the Portland office, Mr. Kelly would fail to pay him his monthly expense account in full. Each month the payment would be short, and this practice continued until plaintiff left the employ of defendant at which time the shortage amounted to the sum claimed. Defendant claims that, because of the acknowledgment of payment, plaintiff should be estopped from now asserting that he had not been paid.

The first four assignments of error are based upon the defense of estoppel.

We agree with counsel for appellant that when all the elements of estoppel are present and there is no dispute in the evidence as to each of those elements it would be the duty of the court to instruct the jury to return a verdict against the party estopped. The elements of estoppel are:

"There must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it". Oregon v. Portland General Electric Company, 52 Or. 502 (95 P. 722, 98 P. 160); Bramwell v. Rowland, 123 Or. 33

(261 P. 57); Skyles v. Kincaid, 124 Or. 443 (264 P. 483); Coos County v. Elrod, 125 Or. 409 (267 P. 530); Coquille M. & T. Co. v. Robert Dollar Co., 132 Or. 453 (285 P. 244).

Defendant introduced the deposition of Howard R. Sullivan, assistant manager, claim division, The Traveller's Insurance Company, defendant, and who was such all the time plaintiff was in its employ. He was asked:

"Q. Did you do anything in reliance upon the contents or form of these accounts? If so, what particular portions of the account did you rely upon? If you did rely upon any portion or portions of the account, what did you do in reliance thereon?

"A. (a) These accounts were accepted as evidence of expenditures made in connection with the work of the company and as evidence of payment of the amount represented in the account had been made by the adjuster to the person whose name appeared at the top thereof and that the adjuster was entitled to reimbursement to enable him to restore his advance to the original amount.

"(b) The entire account.

"(c) Relying upon the account as submitted, we reimbursed the adjuster in the amount represented by the account to enable him to restore his advance to the original amount.

"Q. Referring to the account for the month of July, 1927, upon which Bly's acknowledgment of payment does not appear, state whether payment of this account was ever acknowledged by Bly or any other facts in connection with the account for the month of July, 1927. Produce, have identified by the officer taking this deposition and attach any written receipts, letters or other documents showing the acknowledgment, if any, by Bly of payment of this account for the month of July, 1927.

"A. (a) No, it is not a requirement of the home office that these accounts be receipted. The adjuster alone is responsible to the Home office for the accounting of travel expenditures of himself and his assistants. No significance attaches to the fact that the sole instance where payment was not acknowledged occurred in the month in which the travel expense of the Portland claim office exceeded the adjuster's advance.

\* \* \*

"(b) There were no letters or receipts from Bly for the reasons above stated".

Thus, the defendant, by its evidence, shows that one of the material elements of their defense of estoppel is absent. Their assistant manager's testimony, above quoted, shows that they were not induced to forward the money to Mr. Kelly by nor did they rely on any statement made by plaintiff. They would have forwarded the amount to Mr. Kelly, the chief adjuster, whether plaintiff's acknowledgment of payment had or had not been on the claim, as it had done in the instance when payment had not been acknowledged. It was the name at the top of the bill and not the receipt at the bottom that defendant acted upon.

Defendant claims that as a matter of law it was the duty of plaintiff to inform the defendant that its agent, Mr. Kelly, was not paying him his expense account in full. Plaintiff's employment was not that of a spy or informer on his immediate superior. There was no strictly legal duty on plaintiff to advise defendant. However, there is sometimes a moral duty equally as binding as a strictly legal duty, on an agent to inform his principal of matter affecting the principal's business. A moral obligation is such a duty as the average prudent person would be impelled to discharge. Defendant was not relying upon any statements made

by plaintiff. It was relying entirely upon its chief adjuster, Mr. Kelly, whom it had under bond for the proper distribution of the fund. Mr. Randall, witness for defendant, testified that he had asked plaintiff, "Why he didn't complain to the company," and that plaintiff's reply was, "He regarded Mr. Kelly very highly and that he thought that if he complained to his employer, that probably both he and Kelly would lose their jobs". Under such circumstances the average prudent person would likely keep still and hope to get his money later without causing anyone injury. It does not appear to us that there was either a legal or moral duty on the part of plaintiff to inform defend-ant who was relying solely upon its chief adjuster, Mr. Kelly.

To constitute an estoppel, legal or equitable,

"* * * there must have been some omission, misconduct, misrepresentation or fraud by the party against whom the estoppel is asserted * * * which caused another to be misled and, because of being mis-led, * * * to have altered his position. * * *" Security etc. v. Portland etc., 124 Or. 276 (261 P. 432); American Bank v. Port Orford Company, 140 Or. 138 (12 P. (2d) 1014).

The court committed no error, of which defendant may complain, by refusing to direct a verdict in its favor.

Defendant also complains that the court, in in-structing the jury, remarked,

"There seems to be no dispute as to the amount of money involved, if there is an amount involved, it is the amount claimed in plaintiff's complaint of $642.13".

Defendants, in their answer, admit that plaintiff was paid $1,170.40 and that he earned $1,770.62. How-

ever, defendant introduced a statement by its witness, Mr. Sullivan, showing that it approved the expense account of plaintiff in the sum of $1,812.53, covering the period that plaintiff was employed. So there was no dispute as to the amount. It is true that Mr. Kelly stated on the witness stand in answer to a question as to the amount, "Well, I didn't know. I didn't think that it was possibly quite as much as he said it was, but I kept no record of it and I was satisfied with the record that he kept, possibly three-fifty or something like that. I kept no definite record, we didn't quarrel about the amount". A Mr. Condon, also a witness for defendant, was asked, "Did he ever tell you how much was owing shortly before he left the employ of the company? A. Yes, shortly before he left. The largest item I remember was $355, as I recollect. That was the amount that he said was due him at that time".

These statements are not evidence of anything in the way of contradicting the accounts and records of both defendant and plaintiff as to the amount due. Under the pleadings and the evidence, if there was anything whatever due it was the amount prayed for in the complaint. Defendant was bound by the record made and introduced in evidence by itself and not by what somebody thought or what somebody may have recollected as, "The largest item that he said was due him at that time".

The next assignment of error is the court's refusal to strike from the testimony a part of an answer made by plaintiff Bly, wherein he referred to Marvin Holland as defendant's attorney.

This matter arose as follows: Defendant called, as a witness, C. L. Randall who testified that plaintiff told him that he (plaintiff) had consulted attorney Marvin

Holland, who advised him to complain to his employer. Upon the plaintiff being called in rebuttal, he was asked (in speaking of the above testimony of Mr. Randall):

"Q. Now, he testified that you told him you had talked to Marvin Holland.

"A. I did tell him that. I told him that I talked to the company attorney, Mr. Marvin Holland".

Counsel for defendant moved to strike out the words "company attorney". Witness, in rebuttal, had a right to answer just what he said to the witness, Randall, after Mr. Randall had testified to his version of what Mr. Bly had said. This part of the answer was proper rebuttal of the witness Randall's testimony. After some colloquy between the court and defendant's counsel, the court said, "he may answer". Whereupon the witness said, "I talked to Marvin Holland who was the Traveller's Insurance Company's attorney". He had already answered the question he had been asked and this latter assertion did not add anything to the force of the answer already given.

The defenses of payment were submitted to the jury and the defendant took no exception to the instructions covering these defenses.

Finding no error prejudicial to appellant the judgment will be affirmed. It is so ordered.

BEAN, J., concurs.

BAILEY, J., especially concurs.

RAND, C. J., dissents.

————

BAILEY, J., (Specially concurring.) When an estoppel is relied upon the facts constituting it must be pleaded with particularity. One of the essential ele-

ments of estoppel is that the party claiming it must have been misled and will suffer material injury unless the estoppel is sustained: *Ashley v. Pick,* 53 Or. 410 (100 P. 1103); *Haun v. Martin,* 48 Or. 304 (86 P. 371); 21 C. J., page 1249, § 261; 10 R. C. L., page 697, § 25.

The defendant in this case has apparently attempted to comply with the latter of the foregoing requirements. After alleging in detail the facts relied upon as constituting an estoppel, the following statement is made:

"that the defendant, relying upon the silence and acquiescence of the plaintiff and it being intended by the plaintiff that the defendant should rely thereon and the defendant being wholly ignorant of the facts aforesaid, failed and omitted to take such action to protect its interest and that of the plaintiff, if any, during the period of the employment of said Kelly by the defendant".

Then follows this closing paragraph:

"That by reason of the facts alleged hereinbefore the plaintiff ought to be and is estopped from claiming any sums of money at all from the defendant by virtue of said expenses incurred by plaintiff in connection with his said employment; and that unless the plaintiff is so estopped the defendant will suffer material and irreparable injury".

According to the testimony of Howard R. Sullivan, assistant manager of the claim division of the defendant corporation, Thomas R. Kelly was an employee from May 5, 1924, to July 31, 1930, and plaintiff Bly was an employee of the defendant company from February 7, 1924, to June 29, 1929. Under date of November 24, 1930, the plaintiff notified the defendant com-

pany of his claim against it. Thereafter and sometime in 1931 Kelly was adjudicated a bankrupt. The record does not disclose the date of this adjudication but it does show that the first meeting of creditors was held in June, 1931. There is absolutely no testimony in the record, so far as I have been able to discover, showing what, if anything, the defendant corporation did after receiving Bly's claim as above stated, to require Kelly to make good his defalcation; nor is there anything in the record to prove or indicate that Kelly did not reimburse the defendant company for the money which he had appropriated to his own use instead of paying the plaintiff's claim.

Part of the answer above quoted is to the effect that the defendant, due to plaintiff's silence, failed and omitted to take any action to protect itself during the period of Kelly's employment by the defendant. That undoubtedly is true for the reason that Kelly had ceased to be an employee of the defendant corporation at the time the plaintiff notified the defendant of his claim. The pleadings and record are silent, however, as to what was done by the defendant, if anything, after Kelly ceased to be employed by it, to protect itself in the matter.

The mere fact that defendant did not, or could not, because it was ignorant of the facts, do anything to protect itself before Kelly left its employ does not imply that it did not or could not do something after receiving plaintiff's letter of November 24, 1930, and before Kelly became a bankrupt.

If it is necessary for defendant to allege that it will suffer material and irreparable injury, to constitute a defense by estoppel, it seems to me that defendant must prove more than the mere payment by itself to

Kelly of plaintiff's expense accounts and the plaintiff's failure to notify it that Kelly was not reimbursing him for his advances. It is only natural for one defrauded by his employee to demand that such employee repay the money which he has misappropriated. That very thing may have been done in this case and the defendant may have been reimbursed by Kelly or protected by Kelly from any loss due to his failure to pay plaintiff. I do not believe that the mere payment by defendant to Kelly of the amounts of plaintiff's expense accounts and the misappropriation thereof by Kelly raise a presumption that the defendant has not been reimbursed by Kelly, or that defendant has been injured thereby. Furthermore, the failure of defendant to introduce any evidence as to what it did, or failed to do, after being advised by plaintiff of his claim, might give rise to a presumption that had such evidence been introduced it would have been adverse to defendant's contention that it had suffered material injury: § 9-807, subdivision 5, Oregon Code 1930.

For the foregoing reasons I concur in the result reached by Mr. Justice CAMPBELL.