Argued May 11; affirmed June 8; rehearing denied
September 14, 1937

# MONTGOMERY *v.* ANGLO-CALIFORNIA
# TRUST CO. ET AL.

(68 P. (2d) 1057)

*Walter L. Tooze* and *Geo. B. Guthrie*, both of Portland, for appellant.

*Alfred A. Hampson* and *James C. Dezendorf*, both of Portland (Dey, Hampson & Nelson, of Portland, and Herman Phleger, of San Francisco, Cal., on the brief), for respondents.

CAMPBELL, J.   On April 24, 1935, plaintiff filed his amended complaint in the circuit court for Multnomah county, alleging, in effect, that plaintiff is an attorney at law practicing that profession in the states of Oregon and California; that at the special instance and

request of defendant Robert Dollar Company, a California corporation, and Anglo-California Trust Company, a California corporation, plaintiff rendered professional services as an attorney in a certain foreclosure suit entitled Anglo-California Trust Company, trustee, v. Dollar Portland Lumber Company, in the United States Court for the District of Oregon; that such services were of the reasonable value of $25,000 which defendants had promised to pay; that demand for payment had been made and the defendants have paid no part of said sum; and prayed for judgment.

To this complaint, the Anglo-California Trust Company filed its answer in which it admitted the services performed by plaintiff in connection with the above mentioned foreclosure suit, but denied that the connection or existence of such services arose in the manner described in plaintiff's complaint.

For a further and separate answer and defense, defendant Anglo-California Trust Company alleged, in substance, that it was named trustee in a certain indenture of mortgage to secure the payment of bonds of the Dollar Portland Lumber Company, and that the interest on said bonds was in default during the year 1929; that during that year, the defendant Robert Dollar Company formulated and presented to defendant Anglo-California Trust Company a plan for the deposit of said bonds and a plan for the reorganization of the Dollar Portland Lumber Company; that in pursuance to said deposit agreement, the Robert Dollar Company would have to bear all the expenses of said foreclosure suit, and the defendant Robert Dollar Company requested the trustee to be allowed to furnish the services of the general counsel of the Robert Dollar Company and that it had or would secure the deposit of all of said bonds and that it rep-

resented all the bondholders; that the plaintiff was well acquainted with all of these matters in connection with the said foreclosure proceeding and that plaintiff throughout the entire proceeding· knew that his relationship with the defendant Anglo-California Trust Company was purely nominal and not factual and that he was acting wholly and in truth as general counsel of the Robert Dollar Company.

It further alleged that the cause of action set forth in plaintiff's complaint arose in the state of California prior to December 31, 1929, and not having been commenced within two years from that date it was barred by the statute of limitations of the state of California, § 339 C. C. P. of California [which they pleaded in *haec verba*]. Said section provides that actions of this nature must be brought within two years of their accrual.

Defendant Robert Dollar Company filed its answer in which it admitted the performance by plaintiff of the services in the foreclosure suit above mentioned, but denied that such services arose in the manner described in the complaint.

For a further and separate answer and defense, this defendant alleged:

"That in the month of March 1927, a contract was entered into between the plaintiff and this defendant whereby the plaintiff for a stipulated monthly salary agreed to act as general counsel for this defendant and to devote his entire time to the exclusion of any other business to the performance of any and all legal services arising in connection with the activities, business and properties of defendant corporation and any affiliated or subsidiary corporation or corporations or any firm or corporation in which the principal officers and stockholders of this defendant were interested, and to perform such services as might be required at

his hands in connection with the individual business interests of the executives of this defendant corporation; that the contractual relationship thus created continued throughout the period covered in the amended complaint herein, and that at all of said times the defendant paid to the plaintiff the said salary.''

It was further alleged that the Dollar Portland Lumber Company was a corporation in which the executives of the Robert Dollar Company and the Robert Dollar Company were financially interested and was one of the corporations which was included within the scope of plaintiff's employment; that this defendant was a large stockholder, general creditor, and a holder of mortgage bonds of Dollar Portland Lumber Company, secured by a mortgage held by defendant Anglo-California Trust Company, as trustee, under the indenture of mortgage to secure payment of said bonds and that this defendant requested the Anglo-California Trust Company to permit plaintiff, as general counsel for this defendant, to handle the legal services attendant upon the foreclosure of said mortgage; that the Anglo-California Trust Company with full knowledge of plaintiff herein, acquiesced in said request and permitted plaintiff to institute said foreclosure proceedings. That the defendant Robert Dollar Company acting upon the request of plaintiff herein, employed other counsel to assist plaintiff in said foreclosure suit and defendant paid all other counsel so employed; that shortly prior to the sale in said foreclosure suit, this defendant was appraised of the fact that plaintiff had included in the items going to make up the prospective bid, the sum of $25,000 as an attorney's fee to be allowed defendant Anglo-California Trust Company, plaintiff therein. That plaintiff explained to defendant that it was

proper to include such an item in such proceedings and that it would not create any liability on either of defendants and that plaintiff would file with the clerk of the court a receipt in full for such amount, which he subsequently did.

In paragraph VI of the further and separate answer, this defendant pleaded facts which it claims show laches on part of plaintiff as follows:

"That plaintiff at no time thereafter, until immediately prior to the institution of this suit, made any claim whatsoever of any liability to him from this defendant in connection with the subject-matter of the amended complaint herein, and had plaintiff at any time made any such claim, this defendant would have immediately terminated all relationship with him; that by said silence plaintiff led this defendant to believe that he was continuing to act in good faith in connection with the carrying out of his contractual relationship with this plaintiff, and this defendant for a period of approximately five years thereafter continued continuously to employ said plaintiff as its general counsel and to pay him not only the agreed salary but large sums as bonuses, and it was not until after the termination of plaintiff's connection with the defendant in 1934 that the plaintiff asserted the claim on which his amended complaint is based, and that plaintiff should not now be permitted, in the light of the course of his conduct hereinbefore set forth, to assert such claim; that by reason of plaintiff's laches as aforesaid, and of the long delay, and of the fact that in said interim defendant believing in and relying upon plaintiff's integrity and loyalty continued to employ him as general counsel and to pay him substantial bonuses in addition to the agreed salary, plaintiff is barred by laches and estoppel from asserting said claim."

It also pleaded § 339 of the Code of Civil Procedure of California which bars an action of this nature if not commenced within two years, and alleged that

the cause of action arose in that state prior to the end of the calendar year 1929. It then concluded with the following prayer:

"WHEREFORE, this defendant asks that the proceedings at law herein be stayed, that this case hereafter proceed, until the determination of the issues raised by the equitable answer herein, as a suit in equity, that upon final determination of the cause the proceedings at law be perpetually enjoined; that the prayer of the amended complaint be denied and that this defendant have judgment against plaintiff for its costs and disbursements."

In his reply to the answer of the defendant Anglo-California Trust Company, plaintiff denies the affirmative matter set up therein, but admitted the existence of § 339 of the Code of Civil Procedure of California.

In his reply to the answer of defendant Robert Dollar Company, plaintiff denied generally the new matter set up therein.

Counsel for the parties stipulated:

"It Is FURTHER STIPULATED AND AGREED by and between the plaintiff and defendants that the above entitled *action* shall be tried before the said George R. Bagley as Judge protempore aforesaid, without a jury, and both parties hereto expressly waive a jury in the above entitled court and *action*." (Italics ours.)

The cause came on for hearing before the court and, after hearing, the court made findings of fact to the effect, that in March, 1927, plaintiff and defendant Robert Dollar Company entered into a contract, under the terms of which plaintiff agreed, for a stipulated monthly salary, to act as general counsel for Robert Dollar Company, its allied interests and subsidiaries, or any other corporation in which its stockholders

or executives were financially interested and the legal business of its executives, to the entire exclusion of other legal business, and further agreed to devote his entire time to said employment as general counsel of Robert Dollar Company, and that the contractual relationship existed during the times mentioned in the complaint, and during those times defendant Robert Dollar Company paid plaintiff the said salary. The findings recite the facts in relation to the foreclosure proceedings in the suit of *Anglo-California Trust Company, trustee, v. Dollar Portland Lumber Company*, and that the Robert Dollar Company requested the Anglo-California Trust Company to allow plaintiff, as general counsel of Robert Dollar Company, to conduct said foreclosure proceeding; that the Anglo-California Trust Company acquiesced in said request and allowed plaintiff to conduct said foreclosure proceedings; that the said suit was duly prosecuted to decree, which decree provided that plaintiff therein, Anglo-California Trust Company, be allowed an attorney's fee of $25,000; that the Dollar Portland Lumber Company was a subsidiary corporation, within the meaning of the terms of the contract of employment between plaintiff and the defendant Robert Dollar Company, and in conducting the foreclosure proceedings above mentioned, the plaintiff was acting as general counsel for Robert Dollar Company; that in conducting said foreclosure proceedings, plaintiff was acting in a nominal capacity and did not intend to charge Anglo-California Trust Company for said services nor did plaintiff intend to receive compensation other than that received as general counsel for Robert Dollar Company; that the services performed by plaintiff in foreclosing said mortgage were covered by his contract of employment with Robert Dollar

Company, and he had been paid in full for services rendered under said contract.

Based upon these findings of fact, the court made conclusions of law to the effect that the services rendered in foreclosing said Dollar Portland Lumber Company mortgage were within the scope of his employment as general counsel for the Robert Dollar Company and neither defendant is indebted to plaintiff in any amount under any contract express or implied or otherwise, and then entered judgment for defendants.

From this judgment, plaintiff appeals.

Much of the briefs of both plaintiff and defendants are taken up with the discussion as to whether this proceeding is an action at law or a suit in equity.

■ The complaint states a cause of action for the reasonable value of services rendered at the request of defendants. The defendants admit that the services were performed, but plead payment. They also plead the statute of limitations of California—alleging that the cause of action originated in that state. The statute of limitations is a legal defense and not an equitable one. If the statute is applicable to the facts then there was no need of pleading laches because plaintiff filed his case on the law side of the court and said statute of limitations, if applicable, would have barred the action. However, the case was tried below on the theory that the statute of limitations did not apply and we deem it unnecessary to pass on that question.

■ Defendant Robert Dollar Company also pleaded a certain state of facts which it claims amount to laches, and by reason thereof plaintiff should be estopped from asserting the claim here in controversy.

Briefly stated, the facts pleaded in that respect are: That plaintiff did not present a claim for his services until nearly five years had elapsed and until his connection with the Robert Dollar Company was severed. Defendant Robert Dollar Company contends that had it known that plaintiff intended to present the claim sued upon herein, it would not have retained him in its employ during that time. It does not claim that it suffered any injury by reason of plaintiff's retention during that time, nor does it assert that such delay has deprived it of any evidence, testimony or witness by which it could have established the claim of payment.

"Its [laches] object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can be no longer a safe determination of the controversy." 10 R. C. L. 396.

Said pleading does not amount to an estoppel because there is no showing that said defendant Robert Dollar Company was injured or prejudiced by continuing the employment of plaintiff: *Oregon v. Portland General Electric Company,* 52 Or. 502 (95 P. 722, 98 P. 160); *Bramwell v. Rowland,* 123 Or. 33 (261 P. 57); *Bly v. Travellers' Insurance Company,* 142 Or. 523 (20 P. (2d) 1089).

■ "One of the essential elements of estoppel is as stated in 21 C. J. 1119, § 122: 'The party to whom it was made must have been without knowledge or means of knowledge of the real facts.' * * * There are other elements of estoppel which are lacking in this transaction. The party to whom it was made must have relied or acted upon it to his prejudice. There

must be action thereon by the other party and injury to such other party. In estoppel, it must appear that the representee relied so far on representation that it would be inequitable to permit the representor to shift position his representation announced: 21 C. J. 1119, § 122; Bramwell v. Rowland, 123 Or. 33 (261 P. 57). There can be no estoppel if either of these elements are wanting." *American Bank v. Port Orford Cedar Products Company,* 140 Or. 138 (12 P. (2d) 1014).

■ "Mere silence will not work an estoppel. There must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim." 10 R. C. L. 692.

■ The fact that the defendant Robert Dollar Company asserted that its allegation constituted laches and estoppel does not compel the court to treat it as an equitable matter. Generally speaking when an equitable defense is interposed, the procedure followed is for the court to first determine such equitable defense, and if it finds the equitable defense well taken the action at law "may be perpetually enjoined". If it does not find that the facts alleged constitute an equitable defense or the plaintiff fails to establish by testimony such defense, the court then proceeds to determine the action at law: § 6-102, Oregon Code 1930; and see the cases cited thereunder. In the instant case before hearing, the parties stipulated that the "action" be heard by the court and expressly waived a jury. Taking the view that we do, that no equitable defense was pleaded, and the parties having waived a jury, the cause was tried and disposed of as an action at law.

We quote from appellant's **brief:**

"In presenting this Brief counsel will not extend argument on the disputed testimony touching Mont-

gomery's precise position, meaning whether he was general counsel for all the Dollar interests, subsidiaries, affiliates and executives, or only the Dollar Steamship Lines or some of them. Without prejudice to any other controversy, should such develop, in which Montgomery's precise position may be involved, and for the purpose of this appeal only, we will assume that Montgomery was general counsel for Robert Dollar Co. and its affiliated and subsidiary companies, etc., thus eliminating controversial testimony which covers a large part of the record." Page 18, Appellant's Brief.

■ This leaves but two questions to be determined in this cause, and the determination thereof will dispose of all of appellant's assignments of error. Those questions are: (1) What were the terms of the contract of employment between plaintiff and defendant Robert Dollar Company? (2) Did the services performed by plaintiff in foreclosing the Dollar Portland Company mortgage come within the terms of the said contract of employment?

The learned and experienced jurist who presided over the trial of this cause in the lower court answered the first of these questions as follows:

"That in the month of March, 1927, a contract was entered into between the plaintiff and Robert Dollar Co., under the terms of which the plaintiff, for a stipulated monthly salary, agreed to act as general counsel for Robert Dollar Co., and to devote his entire time to the exclusion of any other business to the performance of any and all legal services arising in connection with the activities, business and properties of Robert Dollar Co., and any affiliated or subsidiary corporation or corporations, or any firm or corporation in which the principal officers and stockholders of Robert Dollar Co. were interested, and to perform such services as might be required at his hands in

connection with the individual business interests of the executives of Robert Dollar Co.;''

The second question he answered as follows:

''That the Dollar Portland Lumber Company was a company in which Robert Dollar Co. had a substantial interest, both as a stockholder and creditor, and said company and its business constituted an activity, business and property of Robert Dollar Co., and said company was an affiliated and subsidiary company of Robert Dollar Co. and plaintiff acted as general counsel for Robert Dollar Co. under his contract of employment with it in foreclosing said mortgage in the name of the Anglo-California Trust Company, as Trustee.''

There is an abundance of evidence to support the findings of the trial court on both of these issues.

Plaintiff testified that he was the head of the legal department and as such head he received certain sums as bonuses the same as all other heads of departments of the Robert Dollar Company.

''Q. Were you singled out by the Dollar Steamship Line, or the Robert Dollar Company, for these special gratuities? Were you the only department head that received them?

A. Oh, no. All department heads received them, and I think most—I think mine was the smallest, based on the fact of my period of service. As I understand, these gratuities were largely based on the time of service. For instance, Mr. King, who is the assistant to the executives, I think received an extremely substantial sum at these times that they were made. They were much larger than mine.''

Plaintiff further testified that he frequently performed legal services under his contract as general counsel for the Robert Dollar Company, for the affiliated or subsidiary companies and for the executives of the Robert Dollar Company, and even per-

formed legal services for their relatives without making any additional charge.

"A. Well, that would be a question you would have to have answered by the donors of the checks, or donor. I accepted them the same as other department heads accepted them, in the nature of gratuities, and I thought in my particular case that probably they were meant to cover the smaller items during the years of work that I had performed entirely outside of my general retainer, such as constant advice as to individuals and their families, going even to relatives of the department heads—I mean the relatives of the executive heads. On many occasions I have given advice and gone into—I guess since this date I have gone into even probate matters for relatives of the executives, not the executives themselves; and I never inquired into the consideration. There was no specific consideration taken up at the time."

He further testified that he appeared in numerous cases in which the Robert Dollar Company was either directly or indirectly involved and that he did not ask for or receive any other compensation than his regular salary. It will be observed that, after his employment in March of 1929, he performed no legal services for anyone other than the Robert Dollar Company, its allied interests, or the executives of such company, except to clean up some unfinished business in which he was theretofore employed in connection with his law firm in Portland. This would preclude the contention of plaintiff that the $8,000 per annum, office rent, equipment, stenographic assistance, etc., was merely a "nominal retainer" and not a salary.

In addition to plaintiff's testimony, the defendants introduced testimony of R. Stanley Dollar, president of the Robert Dollar Company, and Hugo M. Lorber, vice-president of the Robert Dollar Company, who

testified that plaintiff was hired on a salary basis the same as other heads of departments and for that salary he was to give his whole time to the Robert Dollar Company and perform such services for its subsidiaries and affiliates and executive heads as they should demand.

It would extend this opinion to an unreasonable length to quote extensively from the evidence. The evidence abundantly supports the findings of the trial court.

There can be no doubt that the Robert Dollar Company was substantially interested in the Dollar Portland Lumber Company. It was a general creditor of the Dollar Portland Lumber Company in excess of $800,-000; it owned a majority of the stock; it also owned a portion of the mortgage bonds covered by the deed of trust of which defendant Anglo-California Trust Company was trustee. When default occurred in the payment of the interest on said bonds, in order to protect the good name of the Dollar family, and to reorganize the Dollar Portland Lumber Company and effectuate the said deposit agreement, the Robert Dollar Company requested the trustee to allow it to take care of all the foreclosure proceedings, as it had agreed to assume all the expense of the mortgage foreclosure, and furnish its own general counsel. The Anglo-California Trust Company was a nominal party, and the Robert Dollar Company the real party in interest.

■ The plaintiff raises the question that the decree of the United States court in which the foreclosure was had is entitled to full faith and credit in the courts of this state.

This undoubtedly is true, but it has no application to the facts in this case. The authenticated decree of the United States court for the District of

Oregon in the Dollar Portland Lumber Company foreclosure suit, and introduced in evidence herein, recites:

"(g) That *plaintiff* have and recover from the proceeds of the sale the sum of Five Thousand Dollars ($5000) as compensation for its services in this action, and the further sum of Twenty-Five Thousand Dollars ($25,000) as attorney fees." (Italics ours.)

The same provision is in the supplemental decree also introduced in evidence herein. It recites:

"Trustee's fee of $5000.00 and Attorney's fee of $25,000, *as heretofore allowed by the Court in paragraph VII (g) of its said decree* of date, March 20, 1929, and being the sum total of all items referred to in said paragraph V of said decree." (Italics ours.)

The decree of foreclosure, above mentioned, has been fully satisfied and discharged, and none of the parties to it have made any complaint regarding any of its terms and conditions.

Taking the view we take of the case, the other questions of law raised by plaintiff become moot.

The judgment of the circuit court will be affirmed. It is so ordered.

BELT and BAILEY, JJ., did not participate in this decision.